Jack Rosenberg, J.
The issue here involved is the right of the defendants herein to a jury trial. They have raised this issue by moving for a jury trial on the basis of the May 20,1968 decision of the United States Supreme Court in Duncan v. Louisiana (391 U. S. 145).
The defendant, Marvin Puryear and a codefendant who may qualify for treatment as a young adult under article 75 of the New York Penal Law were arraigned in this court after arrest on April 10,1968 and charged with possession of burglar’s tools in violation of section 140.35 of the Penal Law punishable as a class A misdemeanor. They were also charged under section 140.05 of the Penal Law with criminal trespass in the third degree, a violation. They were held for trial after a preliminary hearing before this court on June 4, 1968. At this hearing a motion by prosecution was granted to add a charge of criminal trespass in the first degree under section 140.15 of the Penal Law punishable as a class A misdemeanor.
At the conclusion of the hearing counsel for the defendant Puryear made a motion for a jury trial, citing Duncan v. Louisiana (supra). Under section 70.15 (subd. 1) of the Penal Law, a class A misdemeanor is punishable by imprisonment of up to one year while a “ violation ” (subd. 4) is punishable by imprisonment of up to 15 days. A class B misdemeanor, not here involved, is punishable by imprisonment of not more than three months, (subd. 2).
In Duncan v. Louisiana (supra) the United States Supreme Court dealt with a claim that the right to trial by jury guaranteed by the Sixth Amendment had been extended to criminal trials in State courts by the Fourteenth Amendment as one of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions (Powell v. Alabama, 287 U. S. 45, 67 [1932]); a right “ basic in our system of jurisprudence ”. In re Oliver, 333 U. S. 257, 273 [1948]); ei 6 a fundamental right, essential to a fair trial ’ ” (Gideon v. Wainwrig, 372 U. S. 335, 340 [1963]; Malloy v. Hogan, 378 U. S. 1, 6 [1964]; Pointer v. Texas, 380 U. S. 400, 403 [1965].) The court answered that claim in the affirmative, saying: “ Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which — were they to be tried in a federal court- — would come within the Sixth Amendment’s guarantee.” (391 U. S. 149.)
The court also noted that: ‘ ‘ The guarantee of a jury trial in the Federal and State Constitutions reflects a profound judgment about the way in which law should be enforced and justice admin *538 istered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government * * * If
the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power — a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.” (pp. 155-156.)
But the foregoing noble truisms did not wholly dispose of the problem faced by the court. For the court noted that ‘ ‘ So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment’s jury trial provisions.” (p. 160) Citing Cheff v. Schnackenberg (384 U. S. 373 [1966]), the court conceded that crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses.
The specific Louisiana case and statute under consideration by the court in Duncan gave it no difficulty. The conviction of Duncan had been for simple assault which carried a maximum possible penalty of two years’ imprisonment and a $300' fine. Although Duncan, after being denied a jury trial despite his request, and being found guilty in a trial before a single Judge, had been sentenced to serve only 60 days and pay a fine of $150, the Supreme Court, using the punishment authorized as the criterion, not the punishment assigned, found this clearly to he a serious crime entitling defendant to a jury trial under the Sixth and Fourteenth Amendments.
But the court recognized that its determination in Duncan still left large unanswered questions in other cases. It conceded that ‘ ‘ the boundaries of the petty offense category have always been ill-defined, if not ambulatory” (p. 160) and went on to direct that “ In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance.” Having assigned the courts, lower as well as appellate, this responsibility, the majority commented on the difficulty of the task, saying: 11 This process, *539 although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.” (p. 161).
But we do have some hints from the court as to how to approach this Solomonic task. Citing District of Columbia v. Clawans (300 U. S. 617 [1937]), it is suggested that reference be made to “ existing laws and practices in the Nation.” Then reference was made by the court to the Federal system in which petty offenses are defined as those punishable by no more than six months in prison and a $500 fine. And after stating that in 49 of the 50 States crimes subject to trial without jury are punishable by no more than one year, the court in a footnote, refers to the fact that there are only two instances, aside from Louisiana, in which a State denies a jury trial for a crime punishable by imprisonment for longer than six months. These it cites. New Jersey’s disorderly conduct statute is one (N. J. Stat. Ann., § 2 A: 169-4 [1953]) which carries a one-year maximum; the other is our own system here in the Criminal Court of New York City where a jury trial is provided for, only for offenses bearing a maximum punishment greater than one year, citing People v. Sanabria (42 Misc 2d 464 [1964]), which dealt with the propriety of nonunanimous three-Judge decisions in this court. A final limit is given by the Supreme Court when it points out that ‘ ‘ in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term ”, adding, to complicate this court’s problem, “ although there appear to have been exceptions to this rule.” (p. 161).
Here in our State of New York we have explicit State constitutional and statutory authorization for trials in all cases triable in the Criminal Court of the City of New York without a jury. Our history of this practice in one of our predecessor courts, the Court of Special 'Sessions, goes back to colonial times. (People ex rel. Sammons v. Wandell, 21 Hun 515 [1880].) Section 2 of article I of our State Constitution provides that trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever. But section 6 of article I, which provides that no person shall be held to answer for a capital or otherwise infamous crime unless on indictment of a Grand Jury specifically excludes from this guarantee “ cases of petty larceny, under the regulation of the legislature ’ ’. Section 18 of article VI of our State Constitution, referring to the guarantee of trial by jury in section 2 of article I empowers the Legislature to ‘ ‘ authorize any court which shall have jurisdiction over crimes and other violations of law, other *540 than crimes prosecuted by indictment, to try such matters without a jury”. (People v. Epps, 40 Misc 2d 661 [1963].) The Legislature of this 'State, acting under this State constitutional power, directed trials in this court without jury in sections 40 and 42 of the New York City Criminal Court Act. (People v. Sanabria, supra.)
Thus we see that here in our State of New York, we have used as a criterion to distinguish petty from serious crimes, whether the prosecution must be initiated by indictment. And now the United States Supreme Court has rejected that criterion, using instead the test of the authorized maximum punishment, rather than the nature of the procedure used to initiate the prosecution.
This court is left, therefore, with the need to determine whether a crime punishable by imprisonment of up to one year is a serious or petty crime. And it seems clear to us that by contemporary standards and by 4 4 existing laws and practices in the Nation ’ ’ such a crime is clearly a serious crime. That New York and New Jersey and Louisiana stand alone in viewing a crime so punishable as petty is convincing evidence. A year’s imprisonment is no small matter in any person’s life, whether or not the crime is classified as a misdemeanor rather than a felony. One subject to such a punishment should be allowed to elect to be tried by 44 the common-sense judgment of a jury ”, by a jury of his peers, instead of the 4 4 more tutored but perhaps less sympathetic reaction of the single judge ” or of 44 a group of judges ” (Duncan, supra, p. 156.)
We are not unaware of the fact that jury trials normally consume more time than do trials without a jury; that a survey by the New York Civil Liberties Union reported that whereas the average misdemeanor trial in this court requires approximately one hour, the average jury trial takes three to four and one-half hours. But we believe we are bound by the statement of our .Federal Supreme Court which said: 4 4 There is no substantial evidence that the Framers intended to depart from the established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications.” (391 U. S. 160.)
Efficiency and low cost cannot be allowed to curtail constitutionally guaranteed rights. We are also aware that lower courts should hesitate to initiate such drastic changes in procedure as that here involved. But all courts, even the lowliest, are bound by our Federal Constitution. And in this case, the *541 highest court of the land, in handing down its ruling, has imposed on us no call for “ all deliberate speed ”, no authorization for delay or avoidance of responsibility. (Brown v. Board of Educ., 349 U. S. 294, 301 [1955].) Considerations of efficiency and.court administration are important, but they must yield to the plain mandate of our Constitution as interpreted by our appellate courts. And the means must be found to implement these rights.
In this connection, note must be taken of the fact that Mr. Justice Fortas emphasizes in his concurring opinion in Duncan (391 U. S. 211) that the decision of the court does not mean that the Federal constitutional practices of requiring 12 members in the jury and conviction by a unanimous verdict are now given Federal constitutional sanction. Section 18 of article VI of the New York State Constitution specifically authorizes the Legislature to provide for a jury of only six persons in any court having jurisdiction over crimes and other violations of law. This power could well be used to ease the added administrative burden on this court arising from the duty to grant jury trials in class A misdemeanor prosecutions. (See, also, Report of the American Bar Association Advisory Committee, “ Standards Relating to Trial by Jury ”, referred to in N. Y. L. J., June 24, 1968, p. 1, col. 6, in which the committee concludes that 1 ‘ trial before a jury of twelve whose verdict must be unanimous is not essential in every case.”)
In presenting the facts above, this court has noted that one of the defendants herein may qualify for treatment as a young adult under article 75 of the Penal Law. Under section 75.00 of that article 75 of the Penal Law, one of the defendants herein, if convicted, may find himself sentenced to a reformatory sentence which may last for as long as four years. Of course, the justification for such “ special” treatment is that under our modern methods of enlightened penology, this is for rehabilitation, not punishment. If our ruling had been otherwise with respect to the penalty for a class A misdemeanor, it might have been necessary for us to deal with the issue of the 1 ‘ seriousness ’ ’ of the crime when done by young adults. But our holding granting the motion for a jury trial on the basis of the finding that the crimes charged under sections 140.35 and 140.15 are “ serious crimes ” disposes of the issue and the need to determine the question of the impact of section 75.00 on the motion.
Motion for a jury trial granted.