## IN THE MATTER OF THE PETITION OF CARLOS SANTIAGO FOR A WRIT OF *HABEAS CORPUS.*

Superior Court of New Jersey
Law Division

Decided December 18, 1968.

Mr. *William Goldberg* for plaintiff (*Mr. John J. Powers*, Hudson County Legal Services, attorney).

Mr. *Clinton E. Cronin* for Attorney General of New Jersey (*Mr. Arthur J. Sills*, Attorney General, attorney).

Mr. *Anthony M. DeFino*, Assistant County Prosecutor, for the State of New Jersey (*Mr. James A. Tumulty, Jr.*, Hud-

son County Prosecutor, attorney; *Mr. Charles D. Sapienza, Legal Assistant, on the brief*).

ARTASERSE, A. J. S. C.  This is a complaint and order to show cause why a writ of *habeas corpus* should not issue on behalf of plaintiff Carlos Santiago, an inmate of the Hudson County Penitentiary. Plaintiff was sentenced by the Hoboken Municipal Court on June 13, 1968 for violation of *N. J. S.* 2*A*:170–8 to a term of one year in the county penitentiary. His challenge to the legality of his confinement is based upon the alleged violation of his right to a jury trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The argument is premised upon the theory that *Duncan v. Louisiana,* 391 *U. S.* 145, 88 *S. Ct.* 1444, 20 *L. Ed.* 2*d* 491, decided May 20, 1968 (prior to the plaintiff's conviction), vitiates the New Jersey practice of trying disorderly persons offenses without a jury.  *N. J. S.* 2*A*:8–21(*d*) authorizes the trial of Disorderly Persons Offenses in the municipal court before a municipal Magistrate.  *N. J. S.* 2*A*:169–4 provided a maximum sentence for conviction of such an offense of one year in the county penitentiary and a fine of $1,000.[1] Plaintiff also asserts that *N. J. S.* 2*A*:170–8 is unconstitutional because its standard of proof is impermissively vague.

The court ordered that the Attorney General as well as the Hudson County Prosecutor be served with the complaint and order to show cause since there was a challenge to the constitutionality of a state statute.

The Attorney General appeared through his representative on the return date and advised the court that he did not wish to participate. Accordingly, the court granted his motion to withdraw from the action.

Although the complaint recites that plaintiff was found guilty in the municipal court, the prosecutor at oral argu-

---

[1] *N. J. S.* 2*A*:169–4 was amended on June 25, 1968 to change the maximum sentence thereunder to six months confinement and $500 fine. *L.* 1968, *c.* 113.

ment produced the record from that court which showed that a plea of guilty had been entered by plaintiff. Defense counsel then conceded for the purpose of the present argument that a plea of guilty had been entered. However, he contended that this did not affect the validity of the legal position he was advancing. Apparently his position is that failure to advise plaintiff of a right to a trial by jury vitiates the plea of guilty. The plea of guilty presents, at least, a serious question of waiver of any purported right to a jury trial. However, because of its disposition of the underlying issue, that is, the existence of a right to a jury trial, the court finds it unnecessary to decide this issue of waiver.

Counsel for plaintiff sought initially to bring a class action for a writ of *habeas corpus* on behalf of plaintiff and all prisoners throughout the State similarly situated. The court deemed this procedure improper and inappropriate, and hence refused to issue such an order. However, at counsel's request the court allowed him to brief and argue the propriety of such a class action so that he might have a record from which to appeal. The court has incorporated herein its reasons for rejecting those arguments.

Thus, before turning to the merits of plaintiff's claim, two procedural questions must be answered. First, should plaintiff's remedy be one of *habeas corpus* or post-conviction relief? Second, is he entitled to maintain a class action for the relief sought in the complaint on behalf of all persons similarly situated in the State?

As to the initial procedural question, plaintiff argues that he does not come under the post-conviction relief rules because *R. R.* 3 :10A–1 applies only to persons convicted of a "criminal offense" which, by definition, would exclude disorderly persons offenses. This very literal reading of the rules overlooks the history and intent of the post-conviction procedure. The rules, *R. R.* 3 :10A–1 *et seq.,* were drafted to provide a comprehensive procedure by which all claims for post-conviction relief other than appeal could be

processed without the technical difficulties inherent in the former *habeas corpus* practice. *N. J. S.* 2A:67–1 *et seq.* See *Report of Supreme Court Committee on Post-Conviction Rights of Indigents* (October 22, 1962), *pp.* 3–6. The post-conviction relief procedure was made the exclusive means (other than by appeal) of challenging a judgment of conviction. *R. R.* 3:10A–3. It includes attacks which were formerly made by *habeas corpus. R. R.* 3:10A–2(*d*); *State v. Loray,* 46 *N. J.* 417, 419 (1966).

The same reasons which necessitated the development of a post-conviction procedure for indictable offenses applies to convictions in municipal courts. The drafters of the rules did not intend to leave persons subject to a year's imprisonment without a remedy for illegal detention, or to relegate them to the labyrinth of *habeas corpus* with its maze of common law limitations. Plaintiff's brief indicates these technical pitfalls under the old *habeas corpus* practice.

There are other indications that the post-conviction relief rules are not to be read so narrowly.

In *R. R.* 3:10A–6(*a*) assignment of counsel is covered even where defendant's conviction was for a nonindictable offense. Recently Judge Kentz in *State in the Interest of J. M.,* 103 *N. J. Super.* 88 (*J. & D. R. Ct.* 1968) treated an application for writ of *habeas corpus,* after an adjudication of delinquency in the Juvenile and Domestic Relations Court, as a proceeding in the nature of post-conviction relief, and held that *In re Gault,* 387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed.* 2*d* 527 (1967), was to be given retroactive effect. It has been the practice throughout the State to apply the post-conviction procedures to penal proceedings of all kinds, including disorderly persons offenses.

█ The court therefore concludes that the proper procedure open to plaintiff in this action is a petition for post-conviction relief, and it treats the present application accordingly.

█ As to the second procedural point, there does not appear to be any right under our rules to bring a class action

for post-conviction relief. The procedure is basically a criminal proceeding entitled in the cause, and filed in the county where the conviction was obtained. *R. R.* 3:10*A*–1 *et seq.* But even if the correct form of the action were *habeas corpus, N. J. S.* 2*A*:67–1 *et seq.*, a class action would not lie in the present circumstances. Our rule, *R. R.* 4:36–1, which is taken from *Rule* 23 of the *Federal Rules of Civil Procedure,* governs class actions. Plaintiff would be asserting at most a spurious class right. This is basically a permissive joinder device and judgment in such an action binds only original parties of record or those who intervene and become parties to the action. 3*A Moore's Federal Practice,* §§ 23.10, 23.11.

Furthermore, it has been the general rule that several applicants cannot even join in one petition for writ of *habeas corpus.* 39 *C. J. S. Habeas Corpus* § 77*a, p.* 622. The theory behind the rule has been that a commitment to prison acts individually on each person committed, and a writ seeking his discharge on *habeas corpus* must likewise be individual. *Ferree v. Douglas,* 145 *Pa. Super.* 447, 21 *A.* 2*d* 472 *(Super. Ct.* 1941); *In re Kosopud,* 272 *F.* 330 *(D. C. Ohio* 1920); *United States ex rel. Bowe v. Skeen,* 107 *F. Supp.* 879 *(D. C. W. Va.* 1952).

In *Riley v. City and County of Denver,* 137 *Colo.* 312, 324 *P. 2d* 790 *(Sup. Ct.* 1958), two prisoners attempted to bring a class action essentially for *habeas corpus* type relief for themselves and all others similarly situated because of void judgments of the municipal courts of Denver. The court, relying on above theory, noted that

"Although *habeas corpus* is a civil proceeding * * * we hold that the Rules of Civil Procedure, providing for class actions, do not apply. The very nature of *habeas corpus* proceedings forfends class actions. * * *" (324 P. 2d at 791)

■ However, federal courts have entertained joint applications of *habeas corpus* which presented the common claims

of two or more petitioners who were convicted at a joint trial. *United States ex rel. Poret v. Sigler,* 361 *U. S.* 375, 80 *S. Ct.* 404, 4 *L. Ed. 2d* 380 (1960) ; *Moore v. Dempsey,* 261 *U. S.* 86, 43 *S. Ct.* 265, 67 *L. Ed.* 543 (1923) ; *DeGrandis v. Fay,* 335 *F. 2d* 173 (2 *Cir.* 1964) ; *Curtis v. Boeger,* 331 *F. 2d* 675 (8 *Cir.* 1964). Thus, it would seem that the older conceptualistic rule has fallen to the more pragmatic considerations where a joint application is brought by defendants who were convicted at the same trial. The instant case, however, does not involve joinder. *R. R.* 4 :33–1 requires for joinder that the action arise out of "the same transaction, occurrence, or series of transactions or occurrences * * *." Although this phrase has never been given exact definitional limitation, the court holds that it does not cover the present factual pattern. See *Schnitzer & Wildstein, N. J. Rules Serv. A–IV–1044 et seq.*

In *Adderly v. Wainwright,* 272 *F. Supp.* 530 (*D. C. Fla.* 1967), and *Hill v. Nelson,* 272 *F. Supp.* 790 (*D. C. Cal.* 1967), two celebrated cases by occupants of death rows in Florida and California, the federal District Courts would not go so far as to say that there never could be a *habeas corpus* class action under any circumstances. However, in *Adderly* the record was not complete enough to determine if a class action was possible; and in *Hill* the court decided that a class action was too impractical a vehicle for the circumstances involved in that matter. *Cf.* "Multiparty Federal Habeas Corpus," 81 *Harv. L. Rev.* 1482 (1968), urging the use of class actions in certain federal *habeas corpus* actions.

█ The court nevertheless concludes that plaintiff has no right to bring such an action. Furthermore, insofar as its inherent power may be concerned, the court sees no useful purpose in maintaining such a class suit.

Passing to the merits of the claim herein, the court determines that plaintiff was not entitled to a jury trial. In *Duncan v. Louisiana,* 391 *U. S.* 145, 88 *S. Ct.* 1444, 20 *L. Ed. 2d* 491 (1968), the Supreme Court held that a state

could not deny a jury trial to a person charged with a serious offense. The offense in that case was punishable by a maximum of two years imprisonment. It was admitted that petty offenses were still excluded from the jury trial requirements of the constitution. The court did not draw the line exactly between petty and serious offenses, although it did indicate that an offense with a maximum punishment of six months would qualify as petty. See also *Dyke v. Taylor Implement Mfg. Co., Inc.,* 391 *U. S.* 216, 88 *S. Ct.* 1472, 20 *L. Ed.* 2d 538 (1968), and *Bloom v. Illinois,* 391 *U. S.* 194, 88 *S. Ct.* 1477, 20 *L. Ed.* 2d 1522 (1968), decided the same day. Two New York City trial courts have split on whether a jury trial must be given to a person charged with an offense punishable by one-year imprisonment. Compare *People v. Bowdoin,* 57 *Misc.* 2d 536, 293 *N. Y. S.* 2d 748 (*Crim. Ct.* 1968), granting jury trial, with *People v. Moses,* 57 *Misc.* 2d 960, 294 *N. Y. S.* 2d 12 (*Crim. Ct.* 1968) denying jury trial.

Also subsequent to *Duncan,* Judge Goldmann in *State v. Owens,* 102 *N. J. Super.* 187 (*App. Div.* 1968), certification granted 52 *N. J.* 533 (1968), held that violations of our Disorderly Persons Act were petty offenses and not subject to jury trial requirements. Plaintiff first attempts to distinguish *Owens* on the grounds that the trial there was held prior to the relevant United States Supreme Court decisions. However, Judge Goldmann did not employ such a distinction in upholding the New Jersey statute but went to the merits when he said:

"* * * We are not persuaded that a disorderly persons offense of the kind here considered should be deemed other than petty because of the one year sentence that could be imposed, especially in light of *State v. Maier,* 13 *N. J.* 235, 236 (1953), where the history of the jurisdiction to try and punish simple assaults and batteries without indictment and without trial by jury was traced at some length and *N. J. S.* 2A:170–26 found constitutional by a divided court." (at *pp.* 207–208)

Plaintiff also would distinguish *Owens* because it involved an assault and battery charge (*N. J. S.* 2A:170–26),

whereas the present matter involves a narcotics charge (*N. J. S.* 2A :170–8). Although both offenses are violations of the Disorderly Persons Act and carry the same penal maximum sentences, plaintiff argues that the collateral consequences which flow from conviction of the narcotics offense indicate that *N. J. S.* 2A :170–8 is in the category of a "serious offense." Under his theory that the collateral consequences of the narcotics charge raise it to the status of a "serious" offense, a defendant would have a right to a jury trial even under the amended statute which authorizes a maximum sentence of six months, or for that matter, even if no confinement were authorized. The collateral consequences to which plaintiff refers are *N. J. S.* 2A :169A–1 *et seq.*, dealing with registration of narcotics offenders, and *N. J. S. A., Title* 45, the New Jersey licensing laws, many provisions of which bar licensees convicted of narcotics offenses. The court does not interpret the presence of these collateral consequences as increasing the quality of the penal offense here involved. Many of the statutes referred to by plaintiff under the various sections of the licensing laws, *supra,* authorize the licensing authorities to deny, suspend or revoke licenses of persons who are habitual narcotic users. *N. J. S. A.* 45 :4A–15; *N. J. S. A.* 45 :5–8; *N. J. S. A.* 45 :7–62. Under such a statute the licensee is affected, not by conviction for violation of *N. J. S.* 2A :170–8, but rather by the determination that the licensee or applicant is a *habitual* user. Provisions are made in the various acts involved for administrative hearings with the usual procedural protections.

■■ There are, however, some licensing statutes which authorize denial, suspension or revocation for conviction of a violation by the licensee or applicant of any federal or state law concerning narcotics. See *N. J. S. A.* 45 :6–7 (*h*) ; *N. J. S. A.* 45 :9–37.7; *N. J. S. A.* 45 :9–16 ; *N. J. S. A.* 45 :11–32 ; *N. J. S. A.* 45 :14–12 ; *N. J. S. A.* 45 :14B–24; *N. J. S. A.* 45 :16–6. A conviction under *N. J. S.* 2A :170–8

would subject a licensee or applicant under any of the above acts to possible denial, suspension or revocation of his license in the discretion of the licensing authority. The obvious intent of these acts was to remove from certain professions licensees who are narcotic users. These statutes like those previously enumerated, are basically aimed at the addict or habitual user. However, the administrative burden of proof is eased considerably by authorizing the licensing authorities to take remedial action upon proof of the licensee's conviction of a violation of any state or federal law involving narcotics. Each of these statutes except *N. J. S. A.* 45:6–7 uses the discretionary verb "may" concerning the power of the licensing authority to take action upon proof of a proscribed status or activity of a licensee. (*N. J. S. A.* 45:6–7 concerning the practice of dentistry uses mandatory language.) In addition, each statute above mentioned provides for reinstatement or relicensing in the discretion of the licensing authority. This would indicate that conviction under *N. J. S.* 2A:170–8 does not of itself operate to control the determination of the various state licensing bodies, when the disabling condition is discontinued.

█ The court, therefore, does not interpret these possible collateral consequences which may attend conviction under *N. J. S.* 2A:170–8 as elements which make the offense a "serious" one within the meaning of *Duncan v. Louisiana, supra.* Thus, since there is no valid distinction in the present case from *State v. Owens, supra,* the court determines that plaintiff had no right to a jury trial in the municipal court.

█ Plaintiff's counsel in his brief also asserts that *N. J. S.* 2A:170–8 has an unconstitutionally arbitrary criterion for determining guilt. Although the complaint did not contain this claim, the court will consider the complaint amended to include it. The statute, in its challenged part, reads:

"* * * In a prosecution under this chapter, it shall not be necessary for the State to prove that the accused did use or was

under the influence of any specific narcotic drug or drugs, but it shall be sufficient for a conviction under this chapter for the state to prove that the accused did use or was under the influence of some narcotic drug or drugs as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs) by proving that the accused did manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug. * * *"

Plaintiff admits that *State v. Dennis,* 80 *N. J. Super.* 411 (*App. Div.* 1963), held that the statute was not void for vagueness in establishing a standard of proscribed conduct. Rather he attacks the criterion for determining guilt as outlined in the quoted section. However, this issue was also foreclosed in *State v. Dennis,* where the court answered this very question in this wise:

"If the argument is addressed to the adequacy of the statutory criteria of guilt for purposes of assessing evidence and adjudicating guilt, under requirements of due process, we have no difficulty in sustaining it * * *" (at *pp.* 417–418)

For the foregoing reasons, the relief sought is denied and the application dismissed.