**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4611-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE L. QUINONES, a/k/a
PAPA QUINONES, JOSE L.
RODRIGUEZ QUINONES,
JOSE LUIS QUINONES, and
JOSE L. QUINONES-
RODRIGUEZ,

    Defendant-Appellant.

_____

Submitted January 13, 2021 – Decided February 8, 2021

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Accusation No. 12-07-1757 and Indictment No. 14-04-1072.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Jason Magid, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jose L. Quinones appeals from a May 8, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing alleging ineffective assistance of trial counsel at sentencing. We affirm.

I.

On April 15, 2013, defendant's wife, Madeline Morales, obtained a temporary restraining order (TRO) under the New Jersey Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant because he threatened her life. Morales took the parties' three minor children and went to stay with her sister, Blanca Rodriguez, in Camden. On April 23, 2013, Rodriguez took the two older children to school, and the youngest child, J.M.,[1] stayed home with Morales. Defendant went to his sister-in-law's home to speak to Morales and told the police she indicated to him that she was moving on and he should "go to hell." Possessed with a knife, defendant became enraged and stabbed Morales fifty-one times, killing her. Defendant also incurred a number

---

[1] We use initials to identify the child to protect and preserve his confidentiality. R. 1:38-3(a).

of self-inflicted stab wounds.  When Rodriguez returned to her home, she heard J.M. scream "[Papi] killed."  She found defendant lying on top of Morales with blood all over.  Defendant was transported to Cooper Hospital for evaluation and treatment and recovered.

On June 12, 2013, the police conducted a recorded interview of defendant at Cooper Hospital with the aid of a Spanish interpreter.  In his recorded statement, defendant indicated he became enraged with Morales, his "mind was racing," and his "blood was boiling."  Defendant stated he stabbed Morales, that she may have taken control of the knife and stabbed him before he was able to retrieve it, and ultimately punched her with the knife.  After realizing Morales was going to die, defendant claimed he repeatedly stabbed himself.

Defendant was arrested and charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); fourth-degree possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and fourth-degree criminal contempt for violating the TRO, N.J.S.A. 2C:29-9(b) (count four).

On May 27, 2014, the trial court ordered defendant to be examined in order to ensure his competency to stand trial.  The evaluation was ordered based

upon representations made by defendant's then-counsel Efrain Nieves, Esq.[2] regarding his client's mental health status.

On June 30, 2014, Dr. Peter D. Paul conducted the court-ordered evaluation of defendant and concluded he was competent to stand trial. Dr. Paul noted in his report that defendant denied "ever being hospitalized in the past for medical or psychiatric reasons" and indicated he "did not drink." The trial court accepted Dr. Paul's report and recommendation and entered an order determining defendant was competent to stand trial.

On February 24, 2015, defendant entered into a negotiated plea agreement. Count one was amended to first-degree aggravated manslaughter, and the remaining counts of the indictment would be dismissed. In exchange, the State agreed to recommend a twenty-six-year custodial term subject to an 85% period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On April 10, 2015, defendant appeared for sentencing. The State and defense counsel requested that the court sentence defendant in accordance with the plea agreement. Defendant's counsel raised the issue of defendant's mental illness at the sentencing hearing notwithstanding the fact he was deemed

---

[2] Nieves also represented defendant at his sentencing hearing.

competent to stand trial. The sentencing court noted, "I believe there's no basis to argue for any mitigating factors in this case."

The court found three aggravating factors: the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); the extent and seriousness of defendant's prior record, N.J.S.A. 2C:44-1(a)(6); and the need to deter defendant from committing further violations of the law, N.J.S.A. 2C:44-1(a)(9). Defendant was sentenced to a twenty-six-year custodial term subject to NERA in accordance with the plea agreement.

In addition, the sentencing court had to resentence defendant because the homicide of Morales violated his probation emanating from prior drug offenses. On June 8, 2012, defendant was charged, by way of accusation, with third-degree distribution of a controlled dangerous substance (CDS) within a school zone contrary to N.J.S.A 2C:35-7; possession of a CDS contrary to N.J.S.A. 2C:35-10A(l); third-degree distribution of a CDS contrary to N.J.S.A 2C:5B(3); distribution of CDS in a school zone contrary to N.J.S.A. 2C:35-7; and distribution of a CDS within 500 feet of public housing contrary to N.J.S.A. 2C:35-7.1A. Defendant was sentenced to one year of probation, 364 days in the county jail, fines, and penalties. The record shows defendant did not raise any

evidence of mental health issues at sentencing in 2012 in connection with the drug-related offenses.

In terms of violating his probation, the sentencing court found aggravating factors three and nine applied. The court determined mitigating factor ten, defendant is particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1(b)(10), no longer applied, while factor twelve, the willingness of defendant to cooperate with law enforcement authorities, N.J.S.A. 2C:44-1(b)(12), continued to apply. In balancing the factors, the sentencing court found the aggravating factors outweighed the mitigating factors and crafted a new sentence revoking and terminating probation and ordering four years' imprisonment to run concurrent to the sentence on the aggravated manslaughter charge.

Defendant filed a direct appeal, which is omitted from the record and was dismissed upon defendant's request. On February 23, 2018, however, defendant filed a pro se PCR petition. After being assigned counsel, defendant's attorney filed an amended PCR petition, certification, and brief on his behalf. In his amended PCR petition, defendant's attorney alleged ineffective assistance of trial counsel because counsel failed to "investigate and raise patently applicable mitigating factors" to the sentencing court. Specifically, defendant contended

sentencing counsel failed to raise mitigating factor three, defendant acted under strong provocation, N.J.S.A. 2C:44-1(b)(3); four, there were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, N.J.S.A. 2C:44-1(b)(4); and seven, defendant had no history of prior delinquency or criminal activity and had led a law-abiding life for a substantial period of time before the commission of the present crime, N.J.S.A. 2C:44-1(b)(7). Defendant further alleged sentencing counsel was ineffective for not identifying non-statutory mitigating factors relative to his mental health history and chronic alcoholism.

In his certification in support of his amended PCR petition, defendant raised an entirely new assertion, suggesting he underwent treatment for anxiety and depression between 2008 and 2013. This claim is contrary to what defendant reported to Dr. Paul denying "ever being hospitalized in the past for medical or psychiatric reasons."

On April 26, 2019, in an oral opinion, the PCR court denied defendant's PCR petition and did not find sentencing counsel was ineffective for failing to raise mitigating factors. The PCR court found defendant did not set forth a prima facie case to warrant an evidentiary hearing. This appeal followed.

Defendant raises the following issue on appeal:

A-4611-18

POINT ONE

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING OR A REMAND ON HIS CLAIM THAT HIS TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO ARGUE ADEQUATELY AT SENTENCING.

II.

Where a judge denies a PCR petition without an evidentiary hearing, we review the denial for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). Further, where no evidentiary hearing was conducted, "we may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We also review de novo the PCR court's conclusions of law. Ibid. (citation omitted).

Defendant argues he was prejudiced by ineffective assistance of counsel because had counsel filed medical records and argued for statutory and non-statutory mitigating factors, defendant could have received a lesser term of imprisonment than the one offered in the plea agreement or to an offense one degree lower. According to defendant, this establishes a prima facie case of ineffective assistance of counsel, and he is entitled to an evidentiary hearing since his claim is dependent on evidence "outside of the record." Defendant

now asserts he suffered from mental illness since 2008 and in January 2013 ceased treatment because his mother became ill, he could not cope with her death, and used crack cocaine to "numb the pain." In April 2013, he contends he suffered "serious depression" because his wife left him, he was hearing voices, and ran out of psychiatric medication.

Rule 3:22-2(a) states that PCR "is cognizable if based upon . . . [s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." The Sixth Amendment of the United State Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee effective assistance of legal defense counsel to a person accused of a crime. See State v. Porter, 216 N.J. 343, 352 (2013) (citing Strickland v. Washington, 466 U.S. 668, 685-86 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)).

Generally, a defendant must seek relief through a direct appeal under R. 3:22-3 and "may not use [PCR] to assert a new claim that could have been raised on direct appeal." State v. McQuaid, 147 N.J. 464, 483 (1997); see also R. 3:22-4. However, a defendant may use PCR "to challenge . . . [a] final judgment of conviction which could not have been raised on direct appeal." Id. at 482. See also In re Santiago, 104 N.J. Super. 110, 115 (Law Div. 1968). Petitioners are

"rarely barred from raising ineffective-assistance-of-counsel claims on [PCR]" under New Jersey case law. State v. Preciose, 129 N.J. 451, 459-60 (1992). Further, "[o]ur courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Id. at 460. Here, defendant asserts a constitutional claim of ineffective assistance of counsel, which is cognizable under Rule 3:22-2(a), and the claim could have been raised on direct appeal.

A defendant is only entitled to an evidentiary hearing in connection with a PCR petition if (1) the defendant establishes a prima facie case in support of PCR, (2) the court determines there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) it is determined an evidentiary hearing is required to resolve the claims for relief. See R. 3:22-10(b).

In determining whether a defendant has established a prima facie claim, the facts should be viewed in the light most favorable to the defendant. Preciose, 129 N.J. at 462-63. To determine whether a prima facie claim of ineffective assistance of counsel is present, the claim must be evaluated under the two-prong Strickland test, where "a reviewing court must determine: (1) whether

counsel's performance 'fell below an objective standard of reasonableness,' and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694) (internal citation omitted).

A defendant may satisfy the first prong of the Strickland test "by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Because no "particular set of detailed rules" for an attorney's conduct can encompass the "'variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant' . . . there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Castagna, 187 N.J. at 314 (quoting Strickland, 466 U.S. at 688-89).

"To rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" Ibid. (quoting Strickland, 466 U.S. at 689). Further, the "totality of counsel's performance in the context of the State's evidence of defendant's guilt" must be considered when

assessing the quality of counsel's performance.  Ibid. (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

When evaluating a claim of ineffective assistance of counsel, we do not second-guess defense counsel's tactical decisions, or view those decisions under the "distorting effects of hindsight."  Marshall, 148 N.J. at 157 (quoting Strickland, 466 U.S. at 689).  "Objectively reasonable, albeit debatable or unsuccessful strategic decisions, by counsel are within the range of adequate representation."  Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:22-2 (2021) (citing State v. Arthur, 184 N.J. 307, 319 (2005)).

Specifically, with regard to mitigating factors, our Court held in State v. Hess that "failure to present mitigating evidence or argue for mitigating factors" may constitute ineffective assistance of counsel.  207 N.J. 123, 154 (2011).  The Court opined "[d]efense counsel's failure to bring relevant information in his file to the attention of the [sentencing] court so that the court could independently identify and weigh mitigating factors cannot be ascribed to strategy or reasonable professional judgment."  Id. at 149-50.  However, this does not mean counsel has a duty to make any and all arguments, as the Court has also acknowledged that a "failure to raise unsuccessful legal arguments does not

constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990).

Here, at sentencing, defense counsel specifically stated:

> We believe that the plea agreement is fair, especially in light of the fact that [defendant] did have at the time some mental health issues, still does have some mental health issues. Although there was an evaluation[,] he was certainly found to be competent, that's not our—our position certainly not that he was not competent to proceed here. But just as a background so the [c]ourt is aware and not by any way meaning to justify what happened here, <u>he has suffered from some mental health issues</u>, and I don't believe that at the time that the incident occurred that he was taking all of the medications that he should have been taking. Although I don't—<u>I certainly don't believe based on my reading of the discovery that that was the—the main reason for what unfortunately occurred here</u>. There were other issues involved, jealousy, things of that nature. But we would ask the [c]ourt to sentence [defendant] in accordance with the—the agreement.
>
> [(Emphasis added).]

The sentencing court highlighted:

> The [c]ourt finds no mitigating factors, none were argued for, and <u>I believe there's no basis to argue for any mitigating factors in this case</u>. Therefore, in weighing the aggravating and mitigating factors on a qualitative as well as quantitative basis the [c]ourt finds that the aggravating factors preponderate over any mitigating factors. This was a negotiated plea agreement. In deciding whether or not to accept it the [c]ourt considered the nature and degree of the crime,

the need for punishment and deterrence, the defendant's prospects for rehabilitation, the presentence report, the defendant's previous involvement in the criminal justice system, the recommendations of the prosecutor and the Probation Department, the terms of the plea agreement, and the interest of the public.

[(Emphasis added).]

Moreover, the mitigating factors defendant argues should have been raised are directly contrary to the evidence of record. For example, as to mitigating factor three, that defendant acted under strong provocation, this assertion directly contradicts the testimony defendant gave at his 2015 plea allocution. He confirmed that Morales did nothing to provoke his attack upon her. In his certification, defendant states he saw Morales inside the home with another man on the day of the homicide. However, the record shows defendant never mentioned this during his recorded statement to the police, and his young son, J.M., did not say anyone else was home at the time. Thus, there was no basis for counsel to raise mitigating factor three at sentencing.

As to mitigating factor four, substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, defendant asserts his mental health and substance abuse issues constitute substantial grounds to excuse his conduct. In State v. Bieniek, our Supreme Court affirmed a sentencing court's refusal to find mitigating factor four where the defendant

14

alleged he suffered from hereditary alcoholism. 200 N.J. 601, 610 (2010). There, the sentencing court noted "many people have genetic predispositions to substance abuse and, further, that defendant could have taken actions to help alleviate or terminate his dependency problem." Ibid.

Here, defendant is incredulous given his representation to Dr. Paul that he was never hospitalized previously for medical or psychiatric reasons, and he did not drink. Sentencing counsel investigated defendant's claims and determined raising mitigating factor four would be futile. The PCR court aptly found that even if defendant had satisfied the first prong of the Strickland test, he failed to satisfy the second prong, and therefore, defendant was not prejudiced because the same sentencing result would have occurred. Moreover, the record shows that defendant's purported mental health issues did not negate his knowing and intentional conduct.

Finally, as to mitigating factor seven, defendant having no history of prior delinquency or criminal activity and led a law-abiding life for a substantial period of time, this factor is belied by the record. The homicide occurred while defendant was on probation for prior CDS offenses. He also had a TRO issued against him in favor of Morales. Therefore, sentencing counsel was not ineffective in not arguing mitigating factor seven. A defendant must overcome

a strong presumption that counsel rendered reasonable professional assistance. State v. Parker, 212 N.J. 269, 279 (2012).

Generally, when a defendant receives a sentence that is neither illegal nor excessive, and resulted from a negotiated plea agreement, it is reasonable. State v. Soto, 385 N.J. Super. 247, 255 (App. Div. 2006). Here, had defendant not pled guilty in exchange for a lesser crime, he would have faced a life sentence for the first-degree murder charge. N.J.S.A. 2C:11-3(b). We conclude defendant failed to satisfy both prongs of the Strickland/Fritz test. Strickland, 466 U.S. at 687-88, and Fritz, 105 N.J. at 58. Even if counsel had advanced any mitigating factors on defendant's behalf, in reasonable probability, it would not have resulted in the imposition of a reduced sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4611-18