Scileppi, J.
The issue presented for our consideration in the first of two cases to be discussed is whether a defendant facing possible imprisonment of not more than one year is entitled to a trial by jury.
On August 10, 1968 the appellant, Robert Baldwin, then 26 years old, was arrested for jostling, a class A misdemeanor carrying a maximum term of imprisonment of one year (Penal *212 Law, §§ 165.25, 70.15, subd. 1). The appellant’s pretrial motion for a jury trial Was denied. The trial, conducted without a jury pursuant to section 40 of the New York City Criminal Court Act, resulted in a conviction and the appellant was sentenced to the maximum one-year term. The judgment of conviction was affirmed by the Appellate Term, First Department, and the appellant has appealed pursuant to permission of the Chief Judge of this court.
The appellant argues that the United States Supreme Court’s recent decision in Duncan v. Louisiana (391 U. S. 145) is dispositive of the issue presented herein. We do not agree. Duncan held that the right to a trial by jury guaranteed by the Sixth Amendment is incorporated in the Fourteenth Amendment’s mandate of due process. The court hastened to note, however, that the constitutional right to a trial by jury applies only to “serious” crimes, and not to the so-called “petty” offenses. The court then embarked upon a. definitional journey to determine whether Louisiana’s simple battery statute with a maximum term of two years was of such a serious nature that the deprivation of a jury trial for such an offense was violative of the now incorporated Sixth Amendment guarantee.
In holding that punishment by imprisonment for two years ipso facto renders a crime serious, Justice White, writing for the majority, stated:
“ So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment’s jury trial provisions. There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible' consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive non jury adjudications. These same considerations compel the same result under the Fourteenth Amendment. Of course the boundaries of the petty offense category have always been .ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty *213 offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.
‘1 In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled by District of Columbia v. Clawans [300 U. S. 617], to refer to objective criteria, chiefly the existing laws and practices in the Nation. In the federal system, petty offenses are defined as those punishable by no more than six months in prison and a $500 fine. In 49 of the 50 States crimes subject to trial without a jury, which occasionally include simple battery, are punishable by no more than one year in jail. Moreover, in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term, although there appear to have been exceptions to this rule. We need not, however, settle in this case the exact location of the line between petty offenses and serious crimes. It is sufficient for our purposes to hold that a crime punishable by two years in prison is, based on past and contemporary standards in this cou/ntry, a serious crime and not a petty offense.” (Duncan v. Louisiana, supra, pp. 16(1-162; emphasis added.)
It is evident from the majority opinion that Duncan cannot reasonably be interpreted as being dispositive of the present case, but rather should be read for the proposition that statutes which make crimes punishable by imprisonment for terms of two years or more are to be viewed as serious, notwithstanding how the people of a particular jurisdiction might characterize the crime. The obvious rationale functioning is that necessarily coupled with the incorporation of the Sixth Amendment’s guarantee of a right to a trial by jury is the imposition of Federal standards. Duncan, however, fails to draw the exact line of demarcation where the maximum punishment to be imposed is less than two years, but rather states that ‘ ‘ the definitional task necessarily falls on the courts ” to characterize the various *214 crimes. In the absence of any further indication from the Supreme Court as to what the Federal standards are, it is our opinion, after performing that definitional task, that the people of our State have historically drawn the proper distinction between petty and serious crimes so as to satisfy the constitutional mandate of the Sixth Amendment.
At common law, misdemeanors, crimes punishable by imprisonment for no more than one year, were not indictable offenses and as such were not afforded jury trials, but rather were tried by the Magistrate alone.
When the phrase 4 4 trial by jury ’ ’ was placed in the Sixth Amendment, it carried with it “ the meaning affixed to [it] in the law as it was in this country and in England at the time of the adoption of [the United States Constitution] ” (Thompson v. Utah, 170 U. S. 343, 350). At that time several offenses characterized as “ petty ” were tried without juries and, in tiiany instances, the maximum term of imprisonment was one year (District of Columbia v. Clawans, 300 U. S. 617, 624-626). The reasoning underlying these summary trials was as the Supreme Court stated in Duncan: “ the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive non jury adjudications ” {supra, p. 160).
Recognizing the distinction between ‘4 petty ’ ’ and 4 4 serious ’ ’ offenses, the framers of the New York State Constitution provided that4 4 Trial by jury, in all cases in which it hath heretofore been used .in the colony of New York, shall be established and remain inviolate ” (N. Y. Const. [1777], art. XLI; see N. Y. Const. [1938], art. I, § 2).
The majority in Duncan stated that “ the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment. District of Columbia v. Clawans, 300 U. S. 617 (1937). The penalty authorized by the law of the locality may be taken 4 as a gauge of its social and ethical judgments,’ 300 U. S., at 628, of the crime in question ” (Duncan v. Louisiana, supra, pp. 159-160). It is our opinion that the maximum penalty authorized in the *215 State of New York for a particular crime is not merely a gauge of how the people of our State view that crime, hut necessarily answers the question of whether in their judgment it is petty or serious.
In People v. Bellinger (269 N. Y. 265) the defendant was charged with violating section 359-e (subd. 3) of the General Business Law in that, being a dealer in securities, he failed to file a supplemental dealer’s statement. At that time section 359-g provided that the penalties to be imposed for such an act should be “ a fine of not more than five thousand dollars, or imprisonment for not more than two years or both ”.[1] **The defendant argued that, although the ¡charge in the information was designated a misdemeanor, in reality it was a felony and necessarily requires prosecution by an indictment and a trial by a jury. In reversing the judgment, this court stated that:
“ The meaning of the words 6 infamous crime, ’ which requires indictment by a grand jury and trial by a petty jury of twelve men, has been fairly well understood, during the years of our statehood, as evidenced by the distinction between felonies and misdemeanors outlined by legislative enactment.
^ ^
“ The constitutional provision giving a party this right to a trial by jury does not apply to petty offenses tried before a Court of Special Sessions. (People ex rel. Murray v. Justices, 74 N. Y. 406 ; People ex rel. Comaford v. Dutcher, 83 N. Y. 240.) Petty offenses, however, have a well-defined meaning, classified as such by the penalties attached to them. They cease to he petty when the imprisonment is * * * for a longer term than one year ” (People v. Bellinger, supra, pp. 270-271; emphasis added).
To further evidence that the misdemeanor-felony dichotomy in New York is the same as the petty vs. serious distinction, we need only look at the consequences which necessarily flow from a conviction of a misdemeanor as opposed to a felony.
While it is true that a misdemeanant suffers certain collateral consequences as a result of a conviction, the consequences are not of such a nature so as to render these crimes serious. On *216 the other hand, however, an individual convicted of any felony suffers the very serious collateral consequences of losing the right to register for or vote ,at any election (Election Law, § 152), forfeiture of all public offices and suspension of all civil rights (Civil Eights Law, § 79).
We thus conclude that those crimes which are denominated misdemeanors in this State are not crimes to be characterized as serious and, therefore, individuals charged with such crimes need not be afforded the Sixth Amendment’s guarantee of a right to ,a trial by jury.
Having determined that as to appellant Baldwin section 40 of the New York City Criminal Court Act is not rendered unconstitutional by the incorporation of the Sixth Amendment’s guarantee of a right to a trial by jury, we must necessarily reach the appellant’s second argument that section 40 is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.[2]
The appellant contends that defendants charged with misdemeanors in New York City are presently being tried without juries pursuant to section 40, whereas defendants charged with the identical misdemeanors elsewhere in the State do receive the right to a jury trial (UDCA, ■§ 2011; UCCA, § 2011); that such a classification is unreasonable and necessarily violates the equal protection clause of the Fourteenth Amendment. We do not agree.
The Supreme Court has recognized that territorial discrimination as between different States and even as between different parts of the same State is not of itself violative of the equal protection clause, even if the State has no reasonable basis for making such a distinction.
In Salsburg v. Maryland (346 U. S. 545) the Supreme Court held that the equal protection clause was not violated by a Maryland statute which made evidence obtained by illegal search or seizure generally inadmissible in prosecutions for misdemeanors, but permitted such evidence in prosecutions for certain gambling misdemeanors in one specific county. The court stated:
*217 “ The Equal Protection Clause relates to equality between persons as such rather than between areas” (supra, p. 551). And, therefore: ‘ ‘ Whatever may be our view as to the desirability of the classifications, we conclude that the 1951 amendment is within the liberal legislative license allowed a state in prescribing rules of practice ” (supra, pp. 549-550). The court continued quoting from an opinion in an earlier case which is dispositive of the appellant’s present claim of denial of equal protection:
“ ‘ [T]here is nothing .in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or part of its territory. If the State of New York, for example, should see fit to adopt' the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. * * * It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classest in the same place and under like circumstances ’ ” (emphasis added).
“ The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State ” (Missouri v. Lewis, 101 U. S. 22, 31 [1879], quoted at 346 U. S., p. 551, n. 6). (See, also, Barbier v. Connolly, 113 U. S. 27.)
Even assuming, arguendo, the correctness of appellant’s underlying premise that territorial discriminations cannot be sustained unless based on a reasonable classification, we would nevertheless reach the same result because it is our opinion that *218 the overburdening caseload existing in the criminal courts of the highly populated City of New York has given rise to extraordinary and unique circumstances which manifests the reasonable basis for making such a distinction.
As the Supreme Court stated in Missouri v. Lewis (101 U. S. 22, 32, supra): “ Where part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions,— trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies.”
From July, 1966 through December, 1968 the New York City Criminal Court disposed of 321,368 nontraffic misdemeanor cases; whereas in the next largest city, Buffalo, the City Court disposed of 8,189 nontraffic misdemeanor cases. Although it is true that the population of New York City is approximately 15 times as large as Buffalo’s, the figures still reflect an enormous disproportion, since New York City’s caseload is more than 39 times as great. Moreover, only 78 Judges[3] were available in the New York City Criminal Court to hear those 321,368 misdemeanors whereas in Buffalo there were 12 Judges available to hear the 8,189 misdemeanors, a ratio of 6% to 1, as compared to the caseload ratio of 39 to l.[4]
While this alone would suffice as a reasonable basis for not ■ providing for the more time-consuming trial by jury of misdemeanors in the Criminal Court of the City of New York, one need only look to the already existing chaotic calendar conditions and delays in those courts and other courts of the City of New York, due to the constant increase in volume of cases, to find further justification for the territorial discrimination.
Accordingly, the judgment appealed from should be affirmed.
*219 In Matter of Hogan v. Rosenberg, the companion case to People v. Baldwin, the precise question raised in Baldwin is raised again. The cases, however, are factually distinguishable in that the defendant in this case is between the ages of 16 and 21 and, therefore, notwithstanding his being charged with a misdemeanor, would be subject to young adult treatment pursuant to article 75 of the Penal Law and as such might receive the maximum four-year reformatory sentence.
On April 10, 1968 the defendant, Marvin Pusryear, was arrested and charged with possession of burglar’s tools, a class A misdemeanor (Penal Law, § 140.35) and criminal trespass in the third degree (Penal Law, § 140.05) a violation.[5] After a preliminary hearing was held before Judge Rosenberg, the respondent herein, a motion by the District Attorney, the appellant herein, to add the charge of criminal trespass in the first degree (Penal Law, § 140.15), another class A misdemeanor, was granted. Thereafter Judge Rosenberg granted the defendant’s motion for a jury trial (57 Misc 2d 536), stating that under Duncan v. Louisiana (391 U. S. 145, supra) it is unnecessary to reach the question of whether or not a possible reformatory sentence pursuant to article 75 renders a crime “ serious ”. Judge Rosenberg held that the possibility of receiving a maximum one year’s imprisonment for the class A misdemeanor was enough in itself to render the crimes charged against the defendant “ serious ”, therefore requiring a jury trial.
By order to show cause, the petitioner-appellant Frank Hogan, as District Attorney of New York County, commenced the instant article 78 proceeding seeking an order prohibiting the enforcement of Judge Rosenberg’s order and mandating that the trial proceed without a jury. On December 30, 1968 Special Term denied the application and dismissed the petition.
Rejecting the basis of Judge Rosenberg’s decision, Special Term upheld the constitutionality of section 40 to the extent that it prevented jury trials for those persons charged with crimes punishable by imprisonment for not more than one year. The court, however, held that section 40 is unconstitutional to the extent that it denies a jury trial to young adults who face *220 reformatory sentences pursuant to article 75. We do not agree with the latter determination.
Appellant has advanced the argument that the sentencing of a young adult to a reformatory is not punishment at all but rather ■is purely of a rehabilitative nature and, therefore, should not be considered in determining the petty vs. serious question. It is our opinion that the argument must necessarily fall in light of the Supreme Court’s recent decision in Matter of Gault (387 U. S. 1), in which Justice Fortas, speaking for the court, stated:
“ Ultimately, however, we confront the reality * * * A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a ‘ receiving home ’ or an 1 industrial school ’ for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes ‘a building with whitewashed walls, regimented routine and .institutional hours * * * ’ Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees and ‘ delinquents ’ confined with him for anything from waywardness to rape and homicide.
‘ ‘ In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase ‘ due process ’ ” (supra, pp. 27-28).
As we have already indicated in the companion case that a crime must be characterized as serious when the authorized punishment includes a possible term of imprisonment in excess of one year, the possibility of a young adult receiving a reformatory sentence creates an anomalous situation. Under the new Penal Law, an adult convicted of a misdemeanor can in no event receive a sentence greater than one year and, therefore, as to him, under the rationale of the companion case, the crime is petty. A young adult, however, convicted of the same crime may, pursuant to article 75, receive a reformatory sentence of four years and, therefore, as to the young adult the crime is serious.
*221 The impact of this conclusion upon the New York City Criminal Court as well as the act under which it operates may be assessed from two viewpoints. In one sense, we could affirm the determination of Special Term that section 40 of the New York City Criminal Court Act is unconstitutional to the extent that it authorizes the prosecution of a young adult who is subject to article 75 without affording the right to a jury trial. This view would require the State to afford jury trials to all persons between the ages of 16 and 21 charged with any crime including any act for which an adult would be subject to a term of imprisonment greater than 15 days (see Penal Law, § 55.10).
Another, and far more realistic, approach is that the rationale of the companion case and the Supreme Court’s decision in Matter of Gault (supra) deprive the New York City Criminal Court of jurisdiction to impose a reformatory sentence on young adults pursuant to article 75, in the absence of legislation authorizing a jury trial in such cases and providing procedural machinery therefor. This view would not only do the least damage to the legislative goal of speedy and efficient processing of prosecutions for minor offenses, but would also base the availability of jury trials upon the act allegedly committed by the defendant rather than his age; thus eliminating the anomaly of treating a crime as petty, when committed by a person over 21, while the same act committed by a young adult is considered to be serious.
Adopting this latter view, we hold that the Criminal Court has jurisdiction to prosecute and convict any defendant, including a young adult, for any misdemeanor and, upon conviction, to impose any and all of the sentences authorized for the particular crime involved, except as provided by article 75.
We conclude, therefore, that as defendant Puryear is still awaiting trial, and can no longer receive a reformatory sentence, a conviction for the crimes charged will in no event subject him to imprisonment for a term greater than one year, and, therefore, he is not entitled to a trial by jury.
Accordingly, in People v. Baldwin the judgment appealed from should be affirmed. In Matter of Hogan v. Rosenberg the judgment of Special Term dismissing the petition should be reversed and the petition granted.

. Pursuant ito ¡the Bellinger decision, the Legislature amended section 359-g to provide for punishment “by a fine of not more than five hundred dollars, or imprisonment for not more ¡than one year or both ” (L. 1936, eh. 90).

. Appellant does not argue that section 40 violates the equal protection clause under the New York State Constitution (art. I, § 11) because the 'State Constitution specifically authorizes the Legislature to provide for jury trials in whatever court of the ¡State it chooses (art. VI, § 18).

. Twenty additional Judges have been assigned to itbe Criminal Court of the City of New York (L. 1968, eh. 987). This, however, should not be viewed as a cure-all; for lack of courtroom space and necessary facilities for these new Judges and ¡the mounting volume of cases continue to cause substantial delays and adversely affect the efficient administration of justice in the Criminal Court of the City of New York.

. Statistics supplied ¡by the Office of the State Administrator of the Judicial Conference of the 'State of New York.

. Puryear was arrested and charged with a eodefendant. However, the ease against that codefendant was subsequently dismissed for reasons .unrelated to this proceeding.