STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM C. HEITZMAN, DEFENDANT-APPELLANT.

Argued March 30, 1987—Decided July 9, 1987.

*Robert A. Farkas* argued the cause for appellant (*Marinari & Farkas,* attorneys).

*Linda K. Calloway,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *Gerard Boruch,* Deputy Attorney General, on the brief).

PER CURIAM.

In 1985 defendant, then a biologist with the Department of Environmental Protection, pleaded guilty to possession of marijuana with intent to distribute. He was sentenced to two-years probation, with 180 days County Jail time as a condition thereof. The Appellate Division, one judge dissenting, affirmed. It rejected defendant's contentions that (1) there was no factual basis for the plea, and (2) the court should have forewarned defendant of his potential loss of public employment. *State v. Heitzman*, 209 *N.J.Super.* 617 (1986).

A statute, *N.J.S.A.* 2C:51-2, mandates the forfeiture of public office or position of any person convicted of a crime of the third degree or above. Defendant argues that forfeiture of public employment is one of the "consequences of the plea" that the Court had a duty to determine was within defendant's understanding when the plea was accepted. *See R.* 3:9-2. The dissenter below accepted that contention.

We affirm substantially on the basis of the majority opinion in the Appellate Division, which held that "defendant need be informed only of the penal consequences of his plea and not the collateral consequences, such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, or anything else." 209 *N.J.Super.* at 622. Of course, a trial court would be well advised to inform a defendant of any collateral consequences of which the court may be aware, but the failure to do so cannot be viewed as error requiring further proceedings that could lead to a vacating of the plea.

Affirmed.

Justices CLIFFORD, HANDLER, POLLOCK and GARIBALDI join in this opinion.

Justices O'HERN and STEIN have filed a separate concurring opinion.

Chief Justice WILENTZ has filed a separate dissenting opinion.

O'HERN and STEIN, JJ., concurring.

We concur in the judgment of the Court. Although the majority does not reach the issue, we would expressly recognize this defendant's right to move to withdraw his guilty plea "to correct a manifest injustice," pursuant to *Rule* 3:21–1. Defendant asserts that he was advised by counsel that there would be no adverse impact on his employment as a consequence of his guilty plea. Moreover, the employment-forfeiture statute itself is ambiguous with respect to whether it applies to a conviction under the Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 to –53 (the C.D.S. Act). *N.J.S.A.* 2C:51–2a(1) requires forfeiture of public office or employment by an individual "convicted under the laws of this State * * * of a crime of the third degree or above * * *." However, *N.J.S.A.* 24:21–19b(3) and 24:21–20a(4) classify the offenses for which defendant was indicted as high misdemeanors. While *N.J.S.A.* 2C:43–1b equates third-degree crimes and high misdemeanors for purposes of sentencing, that provision expressly excludes Title 24 offenses from its reach. Although it is unlikely that the Legislature intentionally excluded violators of the C.D.S. Act from the employment-forfeiture provision of the Code, the issue is not before us and has not been previously adjudicated.

We concur with the Court's conclusion that the trial judge is required only to advise defendants of the penal consequences of a guilty plea. Nevertheless, the circumstances of this case lead us to conclude that defendant should not be precluded from obtaining relief under *Rule* 3:21–1. *See State v. Taylor,* 80 *N.J.* 353, 364–65 (1979).

WILENTZ, C.J., dissenting.

I dissent substantially for the reasons given by Judge Simpson below. Whether a court should be required to advise defendant of certain consequences of a guilty plea should not depend on ill-defined and irrelevant characterizations of those consequences. *See Brady v. United States*, 397 *U.S.* 742, 748, 90 *S.Ct.* 1463, 1468, 25 *L.Ed.*2d 747, 756 (1970) ("Waivers of constitutional rights must be ... done with sufficient awareness of the relevant circumstances and likely consequences." (footnote omitted)). It matters little if the consequences are called indirect or collateral when in fact their impact is devastating. The loss of public employment under *N.J.S.A.* 2C:51–2 can actually be more severe than the penal consequences of a plea of guilty. *E.g., State v. Riggins*, 191 *N.J.Super.* 352 (Law Div.1983) (defendant pleaded guilty to unemployment fraud; despite the fact that defendant was not subjected to incarceration, she was not advised that she would lose public employment when entering her plea). The harshness of forfeiture of public employment must not be underestimated. *See Hogan v. Rosenberg*, 24 *N.Y.*2d 207, 216, 247 *N.E.*2d 260, 264, 299 *N.Y.S.*2d 424, 429–30 (1969) ("[A]n individual convicted of any felony suffers the very serious collateral consequence[ ] of ... forfeiture of all public offices ..."), rev'd on other grounds, *Baldwin v. New York*, 399 *U.S.* 66, 90 *S.Ct.* 1886, 26 *L.Ed.*2d 437 (1970). Similarly, the possibility of deportation, even if viewed as a collateral consequence, *see State v. Chung*, 210 *N.J.Super.* 427, 433 (App.Div.1986), obviously can have a severe impact on a person's life. *People v. Padilla*, 151 *Ill.App.*3d 297, 104 *Ill.Dec.* 522, 525, 502 *N.E.*2d 1182, 1185 (1986) (deportation has been deemed "the equivalent of banishment" and equivalent to "a life sentence of exile" (citations omitted)); *People v. Correa*, 108 *Ill.*2d 541, 92 *Ill.Dec.* 496, 500, 485 *N.E.* 2d 307, 311 (1985) ("Deportation, although collateral, is nonetheless, a drastic consequence.... In most cases this collateral consequence is more severe than the penalty imposed by the court in response to the plea." (citation omitted)); *Edwards v.*

*State,* 393 *So.*2d 597, 598 (Fla.Dist.Ct.App.) ("[L]abelling the consequence as collateral does not diminish its significance. Indeed, the penalty of deportation has been recognized as often far more extreme than the direct consequences which may flow from a plea of guilty to an offense."), review den., 402 *So.*2d 613 (Fla.1981). Whether to advise defendant of a particular consequence should be determined by balancing the severity of the consequence against the judicial burden, if any, of requiring the court to tell defendant about it. That defendant's own counsel should advise him of this consequence is no reason why the court should not: the same observation could be made about everything that we now require courts to tell defendant before accepting a plea—his counsel also should advise him of these things. Nor is there any real risk that the court may state the consequence with less than total accuracy: where the consequences are not absolutely certain, the court can indicate that uncertainty and ask defendant if he wishes to consult with counsel.

There may also be a concern that having identified two collateral consequences (loss of employment and deportation) that are substantial, those who plead guilty will claim that they must be informed of numerous other collateral consequences before making an intelligent plea. The rule here proposed does not require the judiciary to do independent research on all possible consequences of every plea, for that indeed would be a burden sufficient to overcome the advantages of disclosure. All that is required is that those consequences generally known and substantially adverse must be disclosed. If we have enough confidence in ourselves to fashion a new rule because we are convinced it is a reasonable change, we should have enough confidence to believe we will remain capable of keeping the rule reasonable.

Where the offense is apparently covered by this statute (*N.J. S.A.* 2C:51–2(a)(1) or (2)), then, before sentencing, the court should ask defendant to name his employer, and if it is a public entity, the court should advise him that his conviction will

automatically cost him his job. If the court entertains any doubt about that consequence it should so state and, in any event, ask defendant if he understands and if he wants to consult with counsel. This fifteen-second burden is clearly worth the benefit of the fairness it achieves in assuring that defendants are aware of the consequences of their guilty plea. It borders on cruelty not to make someone aware of such disastrous consequences when it can be done so easily. It diminishes the justness of our judicial system.[1]

We need not fear that the guilty will go free because of this ruling. All it does, whenever it is applicable, is give the defendant the chance to withdraw a guilty plea. If he takes that option, he will either enter into a new plea bargain or go to trial. There is obviously some risk that in some case a witness may disappear in the meantime—of course it might be a defense witness as well as a prosecution witness. That possibility alone, however, has never deterred us from adopting new rulings, or amending and revising existing rulings, that afford needed protection for defendants. Furthermore, any ruling will benefit only defendant before the Court and those others whose appeals may be pending: it will not provide grounds for post-judgment relief, because "the system cannot continually retry, reevaluate, or resentence all those convicted under prior laws every time that law is changed." *State v. Biegenwald*, 106 *N.J.* 13, 66 (1987); *State v. DeSanto*, 157 *N.J.Super.* 452, 466 (Law Div.1978) (in application for post-conviction relief, court denied the retroactive application of rule modifying the merger of offenses).

---

[1] I would also revise the LR–27 form, presently designed to advise defendants of certain consequences of their plea to include this particular consequence as well as the consequence of potential deportation. If for some reason—that I cannot fathom—it continues to be the conclusion of this Court that the judiciary is not *required* to advise defendants of such consequences, we should do it as a matter of fundamental fairness. We are bound in this matter only by our good sense and our conscience. I suggest that together they call for whatever rule or practice revisions are necessary to accomplish this end.

I would therefore reverse, giving defendant the option of withdrawing his plea and standing trial.

*For reversal* —Chief Justice WILENTZ—1.

*For affirmance* —Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.