151 A.3d 594

STATE OF NEW JERSEY, RESPONDENT,
v. TYRONE ELLISON, PETITIONER.

Superior Court of New Jersey
Law Division
Essex County
Criminal Part

Decided: September 13, 2016

114

*Sarah Vander Woude*, Assistant Essex County Prosecutor, for respondent (*Carolyn A. Murray*, Acting Essex County Prosecutor, attorney).

*Sondra Burke* for petitioner (*Joseph E. Krakora*, Public Defender, attorney).

PASSAMANO, J.S.C.

This matter is before the court on the petition for post-conviction relief (petition) filed on December 24, 2015, by Tyrone Ellison (petitioner). This is petitioner's first petition for post-conviction relief. The court has considered petitioner's pro se submissions and the written submissions of counsel. The court heard oral argument of counsel, for which petitioner was present.

For the reasons set forth herein, the petition is denied without an evidentiary hearing.

I.

On June 11, 2001, an Essex County grand jury returned Indictment No. 01–06–2564–I (indictment). The indictment charged petitioner with second degree sexual assault in violation of *N.J.S.A.* 2C:14–2(c)1 (count one), third degree criminal restraint in violation of *N.J.S.A.* 2C:13–2 (count two), third degree endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4 (count three) and third degree criminal sexual contact in violation of *N.J.S.A.* 2C:14–3(a) (count four).

On June 26, 2001, petitioner, who was represented by counsel, pled guilty to count four of the indictment, as amended, charging him with fourth degree criminal sexual contact in violation of *N.J.S.A.* 2C:14–3(b). The plea agreement provided that all remaining counts of the indictment were to be dismissed and the State would recommend a sentence not to exceed 364 days' incarceration as a condition of a five-year probation. In addition, the State agreed to recommend that the sentence run concurrent with the sentence defendant was then serving on a separate matter. At the plea hearing, the State confirmed that defendant would not be subject to the requirements of Megan's Law.

On September 4, 2001, petitioner was sentenced to time served as a condition of five years' probation. The sentencing judge confirmed that petitioner's conviction did not subject him to Megan's Law. The Sexually Violent Predators Act, *N.J.S.A.* 30:4–27.24 to –27.38 (SVPA), was not mentioned on the record either at the plea hearing or at sentencing.

Petitioner did not file any direct appeal from his conviction and sentence.

In September 2011, the State initiated a proceeding to have defendant civilly committed under the SVPA. The State cited petitioner's 2001 conviction as one of the predicate offenses for the

civil commitment application. The State's petition for civil commitment under the New Jersey Sexually Violent Predator Act, dated September 8, 2011, states that petitioner was at that time "incarcerated at the Adult Diagnostic and Treatment Center ... located in the City of Avenel, ... New Jersey, and is scheduled to max out of his sentence on or about September 17, 2011."

On September 16, 2011, the Superior Court, Law Division, Middlesex County, entered an order for temporary civil commitment. That order provided, in part, that petitioner was to be "temporarily committed to the State of New Jersey Special Treatment Unit, ... [and] in no event shall [petitioner] be released ... prior to a final hearing on this matter." The order set a final hearing for October 5, 2011.[1]

On December 24, 2015, petitioner filed his first petition for post-conviction relief alleging ineffective assistance of counsel. Specifically, petitioner alleges that his counsel was ineffective for failing to advise him that the offense to which he pled guilty could serve as a predicate offense for civil commitment under the SVPA.

For the reasons set forth herein, the court finds that the petition was not timely filed and must be dismissed. In addition, the court finds that petitioner would not be entitled to relief even if the petition were to be considered on the merits. The court also finds that an evidentiary hearing is not warranted in this case.

II.

Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. *State v. Preciose*, 129 *N.J.* 451, 459, 609 *A.*2d 1280 (1992). Under the New Jersey Court Rules:

A petition for post-conviction relief is cognizable if based upon any of the following grounds:

---

[1] Neither party submitted a copy of any subsequent order, but both parties affirmed that petitioner is presently under civil commitment pursuant to the SVPA.

(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;

(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law if raised together with other grounds cognizable under paragraph (a), (b), or (d) of this rule. Otherwise a claim alleging the imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law shall be filed pursuant to *R.* 3:21–10(b)(5).

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy. [*R.* 3:22–2.]

 Post-conviction relief may not be used as an alternative to a direct appeal. *R.* 3:22–3. Nor may post-conviction relief be used as a forum to relitigate a case. *R.* 3:22–5; *State v. Preciose, supra,* 129 *N.J.* at 459, 609 *A.*2d 1280. Petitioner bears the burden of establishing his right to post-conviction relief by a preponderance of the credible evidence. *State v. (Askia) Nash,* 212 *N.J.* 518, 541, 58 *A.*3d 705 (2013); *State v. Preciose, supra,* 129 *N.J.* at 459, 609 *A.*2d 1280; *State v. Mitchell,* 126 *N.J.* 565, 579, 601 *A.*2d 198 (1992).

 Petitions for post-conviction relief must be brought within the time periods provided in the Court Rules.

### III.

 A first petition for post-conviction relief must be filed no later than five years after entry of the judgment of conviction. *R.* 3:22–12(a)(1). The time limit furthers the need for finality in court proceedings. It also serves to relieve the uncertainty that would flow from potentially having to re-litigate matters long considered closed. *State v. Mitchell, supra,* 126 *N.J.* at 576, 601 *A.*2d 198. The New Jersey Supreme Court noted in this regard that:

As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. Those difficulties have not gone unnoticed by our courts.

[*Id.* at 575, 601 *A.2d* 198.]

■ In light of these considerations, the rules that allow for any filing outside the five-year period are strictly construed. *Id.* at 575–76, 601 *A.2d* 198. Except as provided in the <u>Rules</u>, the time limit is not subject to relaxation. *R.* 3:22–12(c).

■ In this case, there is no question that the petition was filed outside of the five-year time period. Petitioner was sentenced in 2001 and the petition was filed in 2015—fourteen years later. Consequently, the interests of finality and avoiding prejudice to the State militate in favor of enforcing the time bar. Those interests must however, be weighed against the petitioner's interest. *State v. Mitchell, supra,* 126 *N.J.* at 580, 601 *A.2d* 198.

Under the Court Rules, for a first petition, a filing outside the five-year period will not be permitted "unless it alleges facts showing that the delay beyond said time was due to the defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true, enforcement of the time bar would result in a fundamental injustice." *R.* 3:22–12(a)(1). The court now considers whether petitioner has met this test.

The first factor that petitioner must show, excusable neglect, "provides the means for a court to address and correct a criminal judgment where adherence to it would result in an injustice." *State v. Norman,* 405 *N.J.Super.* 149, 159, 963 *A.2d* 875 (App. Div. 2009); *see State v. Milne,* 178 *N.J.* 486, 492, 842 *A.2d* 140 (2004); *State v. Goodwin,* 173 *N.J.* 583, 594–95, 803 *A.2d* 102 (2002); *State v. Murray,* 162 *N.J.* 240, 246, 744 *A.2d* 131 (2000); *State v. Afanador,* 151 *N.J.* 41, 52, 697 *A.2d* 529 (1997); *State v. Mitchell, supra,* 126 *N.J.* at 579, 601 *A.2d* 198. Excusable neglect "encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." *State v. Norman, supra,* 405 *N.J.Super.* at 159, 963 *A.2d* 875.

■ In this case, the court finds that petitioner has not alleged facts sufficient to warrant relaxing the five-year time bar.

Since petitioner has argued that he was unaware of the potential for civil commitment until the State brought proceedings against him, the court has considered the fourteen-year delay as being comprised of two time periods. First, is the time from when petitioner was sentenced in 2001, to when the State initiated civil commitment proceedings in September of 2011. The second, is from September of 2011, until when the petition was filed in December 2015. Together, those two time periods make up the fourteen years between when petitioner was sentenced and when he filed the petition.

As to the first of the two, petitioner contends that he did not become aware of the collateral consequence of his plea until September 2011, when the state initiated the civil commitment proceedings. In this case, the court finds that there is no excusable neglect—even if petitioner was in fact unaware of the collateral consequences until the State filed the civil commitment proceeding.

Petitioner has not cited to any published opinion from the New Jersey courts that finds excusable neglect based on a defendant being unaware of the potential for civil commitment. As discussed more fully below, relaxing the time bar in these circumstances would have the effect of giving the ruling in *State v. Bellamy*, 178 *N.J.* 127, 835 *A.*2d 1231 (2003) greater retroactive effect than was expressly given by our Supreme Court.

Under the facts of this case, the court does not find excusable neglect. In reaching this decision, the court distinguishes this case from *State v. Maldon*, 422 *N.J.Super.* 475, 478, 29 *A.*3d 745 (App. Div. 2011). In *Maldon*, the defendant

> [i]n a certification accompanying the petition, ... asserted that when he was considering the plea offer, his trial attorney had informed him "that he would not be civilly committed." Defendant contended that his attorney rendered ineffective assistance of counsel by providing this misinformation. He further attested that "[h]ad I been advised that I could be civilly committed upon release ... I would have gone to trial."

> [*Id.* at 479, 29 *A.*3d 745.]

Under those circumstances, the Appellate Division found that notwithstanding that the application for post-conviction relief had been filed more than five years after sentencing, "defendant's petition was timely." *Id.* at 482, 29 *A.*3d 745. Unlike in *Maldon,* petitioner in this case does not claim to have received erroneous advice.

In his notarized petition for post-conviction [relief], petitioner states as follows:

In the transcript of defendant's plea hearing and later sentencing, nowhere is the defendant admonished, as prescribed by law, that he will be subject to indefinite civil commitment.

. . . .

[F]undamental fairness requires the court that the defendant be informed of the possible indefinite civil commitment, and inquire as to whether the defendant still wished to plead guilty.

. . . .

A full review of the plea made on June 26, 2001, and the transcript which contains it shows that no such admonishment was given by Judge Lester. To now use that plea as a basis for civil commitment as a sexually violent predator is unreasonable, unethical, and not a legitimate part of the sentence. Therefore, defendant's plea must be vacated in this circumstance, and further hearings on this matter scheduled before this court for arguments on the merits of defendant's arguments.

These statements are consistent with the position taken in the supporting letter-brief, dated April 25, 2016, filed by petitioner's counsel. In the letter-brief, counsel states that "[n]o mention was made of the Sexually Violent Predator's Act (SVPA) which had been enacted in 1998." The letter-brief further states that "[n]either the attorney for Mr. Ellison nor the court made mention of the future implications of the already-enacted SVPA." Counsel stated that same position in petitioner's presence at oral argument.

In this case, petitioner does not claim to have been given erroneous advice. Rather, he claims to have received no advice with respect to potential civil commitment. As detailed in Part IV of this opinion, at the time petitioner was sentenced there was no requirement that he be advised that civil commitment was a potential collateral consequence. The court finds that neither *State*

*v. Maldon*, nor any other authority supports a finding of excusable neglect in this case.

In addition, even if the first ten years, between sentencing to the initiation of the civil commitment proceeding could be excused, petitioner has not provided any excuse for the four-year delay in filing after the State commenced civil commitment proceedings. The petition states that the 2001 conviction was cited by the State as a predicate offense for civil commitment. Petitioner's four-year delay in seeking post-conviction relief after the State initiated commitment proceedings is unexplained.

Viewed either as a fourteen-year total, or in component parts, the court finds that the delay in filing the petition was not the result of excusable neglect.

■ Fundamental injustice, the second factor to be considered on an application to relax the time bar, is found where the deficient representation of counsel affected "a determination of guilt or otherwise wrought a miscarriage of justice, . . . ." *See State v. (Askia) Nash, supra*, 212 *N.J.* at 546, 58 *A*.3d 705 (quoting *Mitchell, supra*, 126 *N.J.* at 587, 601 *A*.2d 198). In such circumstances, the court may relax a procedural rule that otherwise would bar post-conviction relief. *Ibid.*

■ To succeed on a claim of fundamental injustice, the petitioner must show that the error "played a role in the determination of guilt." *Ibid.* "If the petitioner articulates facts that demonstrate a serious question about his or her guilt or the propriety of the sentence imposed and is prepared to provide factual evidence to support it, then sufficient grounds for relaxing the Rule may exist." *Ibid.* In order to show that an injustice would result from application of the time bar, a significant liberty interest must be at stake and petitioner must offer something more than bare allegations. *Ibid.*

In this case, the court finds that petitioner cannot show any fundamental injustice. Petitioner's claim of ineffective assistance of counsel is based on the new rule of law established by the New

Jersey Supreme Court in *State v. Bellamy, supra,* 178 *N.J.* at 127, 835 *A.*2d 1231. In *Bellamy,* our Supreme Court held that a defendant must be informed if the collateral consequences of a plea include the potential for civil commitment under the SVPA. The rule announced in *Bellamy* was, however, given only limited retroactivity. With respect to that issue, the Court held that the new rule would apply prospectively and to any case where all avenues of direct appeal had not been exhausted. *Id.* at 141, 835 *A.*2d 1231.

In this case, petitioner was sentenced in 2001 and did not file any direct appeal. Thus, he did not have any avenue of direct appeal available to him in 2003, when *Bellamy* was decided. Consequently, the new rule announced in *Bellamy* does not apply. For that reason, the court finds that enforcement of the time bar in this case cannot, as a matter of law, constitute a fundamental injustice. As with the issue of excusable neglect, to hold otherwise would have the effect of giving *Bellamy* a greater retroactive effect than that which was expressly provided by our Supreme Court.

In reaching this decision, the court is aware of the holding in *State v. (Herman) Nash,* 64 *N.J.* 464, 317 *A.*2d 689 (1974). In *(Herman) Nash,* the New Jersey Supreme Court found that Nash's post-conviction application should be heard notwithstanding that his direct appeal had been completed and his post-conviction relief application was based on a new rule of law that was given only limited retroactivity. This court does not believe however that the ruling in *(Herman) Nash* requires relaxation of the time bar in this case.

In *(Herman) Nash,* the period of time between when the new rule in *State v. De Bonis,* 58 *N.J.* 182, 276 *A.*2d 137 (1971), was announced and the conclusion of Nash's appeal was one month. Specifically, *State v. De Bonis* was decided in April 1971, while Nash's case was on appeal. One month later, in May 1971, the Appellate Division ruled on Nash's appeal. There is no indication that Nash had sought to supplement the record or otherwise bring

the decision in *State v. De Bonis* to the Appellate Division's attention while his appeal was pending.

Subsequently, after his appeal was concluded, Nash filed an application for post-conviction relief, based on the new rule of law that had been established in *State v. De Bonis.* In ruling that Nash's application for post-conviction relief should not be time barred, even though his direct appeal had concluded, our Supreme Court noted that Nash's appeal had been pending at the time, the new rule was announced. The Court stated that it was hesitant "to make the availability of a retroactive principle in a criminal context turn on whether an attorney has read recent advance sheets." *State v. (Herman) Nash, supra,* 64 *N.J.* at 475, 317 *A.*2d 689.

The circumstances that warranted relief in *(Herman) Nash* do not exist in this case. Here, the petition was filed fourteen years after sentencing, eleven years after the ruling in *Bellamy,* and four years after the State actually initiated civil commitment proceedings. Nothing in *(Herman) Nash,* or any other opinion of which this court is aware, would allow for relaxation of the time bar under the facts of this case.

For these reasons, the court finds that petitioner has not shown either excusable neglect or that enforcement of the time bar would cause an injustice. Petitioner has not established grounds for relaxing the time bar. As such, the petition, which was not timely filed, must be dismissed.

## IV.

Moreover, the court finds that even if the time bar were to be relaxed, the petition would be denied on the merits.

In this case, petitioner alleges ineffective assistance of counsel. Unless a petition for post-conviction relief based on ineffective assistance of counsel states a "prima facie" case, it must be dismissed. *R.* 3:22–4(b)(2)(C). In order to establish a prima facie case, a defendant must show a reasonable likelihood

that he can satisfy the two-prong test set out in *Strickland v. Washington*, 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984). That test was adopted by our Supreme Court in *State v. Fritz*, 105 *N.J.* 42, 519 *A.*2d 336 (1987).

▮ The first prong of the *Strickland* test requires that the defendant "demonstrate ... that counsel's performance was deficient." *State v. Parker*, 212 *N.J.* 269, 279, 53 *A.*3d 652 (2012). The second prong requires that the defendant "establish that the ineffectiveness of his attorney prejudiced his defense." *Ibid.*; *State v. Preciose*, *supra*, 129 *N.J.* at 462–464, 609 *A.*2d 1280. In cases such as the one now before this court, where the ineffective assistance of counsel claim involves a guilty plea, the two-prong test requires that the defendant show "(1) [that] counsel's assistance was not within the range of competence demanded of attorneys in criminal cases; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *State v. DiFrisco*, 137 *N.J.* 434, 457, 645 *A.*2d 734 (1994).

▮ Both prongs of the *Strickland* test must be met and a defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." *State v. Mitchell*, *supra*, 126 *N.J.* at 579, 601 *A.*2d 198. The court need not consider the two prongs in any particular order. *Strickland*, *supra*, 466 *U.S.* at 697, 104 *S.Ct.* at 2069, 80 *L.Ed.*2d at 700. In addition, if the court finds that defendant has not met his burden on one prong, it need not consider the other. *Ibid.* In considering whether the test has been met, the court views the facts "in the light most favorable to [the] defendant ..." *State v. Cummings*, 321 *N.J.Super.* 154, 170, 728 *A.*2d 307 (App. Div.), *certif. denied*, 162 *N.J.* 199, 743 *A.*2d 852 (1999). For the reasons set forth herein, the court finds that petitioner cannot establish a prima facie case of ineffective assistance of counsel.

In order to satisfy the first prong, known as the performance prong, a defendant must show that defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaran-

teed by the Sixth Amendment." *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693. The Court held in *Strickland* that "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694. The first prong is satisfied only upon a showing that an attorney's performance fell below an objective standard of reasonableness. *Ibid.*

In considering that standard, the Court in *Strickland* noted that the representation of a criminal defendant entails certain basic duties, such as client loyalty, adequate consultation, and legal proficiency. *Ibid.*; *see also State v. Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336. The inquiry centers on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland, supra,* 466 *U.S.* at 688, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694. There is a strong presumption that counsel's actions fall within the wide range of reasonable professional assistance. *Id.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694; *see State v. Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336.

In this case, petitioner alleges that by failing to inform him that the offense to which he pled guilty could subject him to civil commitment under the SVPA, his counsel was ineffective. The facts on which petitioner bases his claims are undisputed.

Petitioner pled guilty on June 26, 2001, and was sentenced on September 4, 2001. He did not file any direct appeal. As detailed above, petitioner claims that he was not advised that the offense to which he pled guilty could serve as a predicate offense for civil commitment under the SVPA. Petitioner does not claim to have been given erroneous advice. The specific question that this court must now consider is whether counsel's actions were within the range of competence required of attorneys in criminal cases at the time. *State v. Martini,* 160 *N.J.* 248, 266, 734 *A.*2d 257 (1999); *Missouri v. Frye,* 566 *U.S.* 134, 146–150, 132 *S.Ct.* 1399, 1409–10, 182 *L.Ed.*2d 379, 391–92 (2012).

In support of his position, petitioner cites to *State v. Bellamy*, *supra*, 178 *N.J.* at 127, 835 *A.*2d 1231, which was decided by the New Jersey Supreme Court on December 11, 2003. In *State v. Bellamy*, the New Jersey Supreme Court held for the first time that:

prior to accepting a plea to a predicate offense under the [SVPA], the trial court should ensure that a defendant understands that, as result of his or her plea, there is a possibility of future commitment, and that such commitment may be for an indefinite period, up to and including lifetime commitment.

[*Id.* at 139–140, 835 *A.*2d 1231.]

The holding in *Bellamy* stated a new rule. Specifically, that a defendant must be advised if he or she is considering a guilty plea that carries the potential for civil commitment under the SVPA. *Ibid.* The New Jersey Supreme Court held that notwithstanding that civil commitment is a collateral consequence, fundamental fairness requires that a defendant be advised of that possibility. *Id.* at 131, 835 *A.*2d 1231. The court reasoned that "it matters little if the consequences are called indirect or collateral when in fact their impact is devastating." *State v. Heitzman*, 107 *N.J.* 603, 606, 527 *A.*2d 439 (1987). Failure to give that advice, may constitute a basis for a defendant to withdraw his or her guilty plea. *Bellamy*, *supra*, 178 at 140, 835 *A.*2d 1231.

Our Supreme Court did not, however, make its holding in *Bellamy* retroactive in all cases. With respect to retroactivity, the Court held:

The purpose of the rule announced herein is to ensure that a defendant eligible for commitment under the Act clearly understands the nature and the consequences of the plea. However, trial courts routinely have not informed defendants of the consequences because those consequences are not direct and penal consequences of the plea. While we do not know the exact number of defendants who pled guilty to a predicate offense without knowing the possible consequences of the Act and were later committed, we recognize that full retroactivity of this decision would have a disruptive effect on the administration of justice. The lack of data regarding the number and kinds of cases that would be affected by a rule of complete retroactivity and the impact that complete retroactivity would have on the administration of justice mandates that the new rule should apply only to cases pending direct review at the time of the rule's announcement.

We conclude that the rule announced in today's decision—that prior to accepting a guilty plea to a predicate offense, trial courts must inform defendants of possible

consequences under the Act—shall be applied in this case and those cases pending in which the defendant has not yet exhausted all avenues of direct review. [*Id.* at 142–143, 835 *A*.2d 1231.]

Our Supreme Court limited the retroactivity of its holding in *Bellamy* "to cases pending direct review at the time of the rule's announcement." *Ibid.* Here, petitioner's case was not pending direct review at that time. Consequently, the new rule announced in *Bellamy* does not apply.

Prior to the new rule, "the determination of whether a defendant must be informed of certain consequences of his plea turns on whether those consequences are 'direct or penal,' in which case defendant must be informed, or 'collateral,' in which case defendant need not be informed." *Id.* at 137, 835 *A*.2d 1231 (2003); *State v. Heitzman*, 209 *N.J.Super.* 617, 622, 508 *A*.2d 1161 (1986), *aff'd*, *State v. Heitzman*, *supra*, 107 *N.J.* at 603, 527 *A*.2d 439. The potential for "commitment pursuant to the [SVPA] is not a direct consequence of pleading guilty to a predicate sexual offense because commitment does not automatically flow from the conviction." *State v. Bellamy*, *supra*, 178 *N.J.* at 138, 835 *A*.2d 1231.

At the time that petitioner entered his plea, there was no requirement that a defendant be advised that he could be subject to the collateral consequence of civil commitment under the SVPA. Therefore, petitioner cannot establish the first prong of the *Strickland* test.

 Nor does the fact that petitioner was advised that the plea would not subject him to Megan's Law change this result. Petitioner argues that advising him that he would not be subject to Megan's Law somehow obligated counsel to provide advice on the SVPA. Petitioner has not cited to any authority that holds, or supports any argument, that by giving advice on Megan's Law, counsel was obligated to specifically advise of non-Megan's Law collateral consequences. Any such rule would turn counsel's advice at the time of a plea into ineffective assistance with respect to any unmentioned collateral consequences. Neither *Strickland*, nor any other authority, can be read as adopting that as a standard. The

court denies any request to find that counsel's performance was deficient on the facts of this case.

The petitioner has not met the first prong of the *Strickland* test. Since both prongs must be satisfied, the petition must be denied. *Strickland, supra,* 466 *U.S.* at 697, 104 *S.Ct.* at 2069, 80 *L.Ed.*2d at 699.

 Nonetheless, the court finds that even if it were to consider the second prong, the petition fails. Petitioner alleges that had he known he faced civil commitment under the SVPA, he would have taken his case to trial. That is nothing more than a bare allegation.

The indictment in this case charged defendant with second degree sexual assault (*N.J.S.A.* 2C:14–2(c)(1)), third degree criminal restraint (*N.J.S.A.* 2C:13–2), third degree endangering the welfare of a child (*N.J.S.A.* 2C:24–4), and third degree criminal sexual contact (*N.J.S.A.* 2C:14–3(a). Had defendant gone to trial and lost, he would have faced a custodial sentence from five to ten years on the second degree sexual assault charge. He would also face up to five years' incarceration on each of the three third degree offenses. While certain charges might merge or run concurrent, petitioner was, in any event, facing significant exposure.

By pleading guilty, petitioner received a sentence of time served and five years' probation. It is nothing but speculation for petitioner to now claim that had he been informed of the potential for civil commitment, he would have risked a significant custodial sentence by rejecting the plea and going to trial. Speculation does not serve to satisfy the second prong of the *Strickland* test.

## V.

 Lastly, the court finds that there is no need for an evidentiary hearing.

 An evidentiary hearing to review a defendant's post-conviction relief allegations is required only when a defendant

establishes a prima facie case and the court determines that "there are material issues of disputed facts that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief." *R.* 3:22–10(b); *Preciose, supra,* 129 *N.J.* at 462–63, 609 *A.*2d 1280. A "defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative.'" *State v. Porter,* 216 *N.J.* 343, 355, 80 *A.*3d 732 (2013) (quoting *State v. Marshall,* 148 *N.J.* 89, 158, 690 *A.*2d 1 (1997)). A defendant will not be entitled to an evidentiary hearing simply because relief is requested. *State v. Jones,* 219 *N.J.* 298, 311, 98 *A.*3d 560 (2014); *State v. Cummings, supra,* 321 *N.J.Super.* at 154, 728 *A.*2d 307.

With respect to evidentiary hearings, the Court Rules provide that:

> (b) A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.

> (c) Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4–4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing.

> (d) The scope of an evidentiary hearing shall be limited to the issue of whether the defendant was improperly convicted.

> (e) A court shall not grant an evidentiary hearing:

> (1) if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to post-conviction relief;

> (2) if the defendant's allegations are too vague, conclusory or speculative; or

> (3) for the purpose of permitting a defendant to investigate whether additional claims for relief exist for which defendant has not demonstrated a reasonable likelihood of success as required by *R.* 3:22–10(b).

> [*R.* 3:22–10.]

 "[I]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief . . . then an evidentiary hearing

need not be granted." *State v. Marshall, supra,* 148 *N.J.* at 158, 690 *A.2d* 1; *State v. Flores,* 228 *N.J.Super.* 586, 589, 550 *A.2d* 752 (App. Div. 1998), *certif. denied,* 115 *N.J.* 78, 556 *A.2d* 1220 (1989). An evidentiary hearing should not be conducted for investigatory purposes. *R.* 3:22–10(e)(3). Nor is the court obligated to conduct an evidentiary hearing to allow a defendant to establish a prima facie case not contained within the post-conviction relief application. *State v. Bringhurst,* 401 *N.J.Super.* 421, 951 *A.2d* 238 (App. Div. 2008).

In this case, the facts presented by petitioner are essentially uncontested. Petitioner states, in his sworn petition, and through his counsel in briefing and at oral argument, that he was not advised that his plea could expose him to potential civil commitment. Petitioner does not say he was misadvised. The State has not disputed that position and the court takes it as true for purposes of its ruling. Accordingly, the court finds that there are no material disputed facts. The court also finds that it has sufficient facts on which to rule and an evidentiary hearing would not aid the court.

For these reasons, the court finds no basis for an evidentiary hearing.

## VI.

For the reasons set forth herein, the petition for post-conviction relief is denied, without an evidentiary hearing. An order consistent with this opinion will issue.