NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4556-19

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

STEPHEN P. MAROLDA,

       Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 4, 2022

APPELLATE DIVISION

Argued February 9, 2022 – Decided March 4, 2022

Before Judges Hoffman, Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 06-08-1382.

Eric V. Kleiner argued the cause for appellant.

William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Ian C. Kennedy, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

    The opinion of the court was delivered by

GEIGER, J.A.D.

Defendant Stephen P. Marolda appeals from a Law Division order denying the petition for post-conviction relief (PCR) that he filed almost thirteen years after he was sentenced in accordance with a plea agreement, without an evidentiary hearing. We affirm.

I.

We derive the following facts from the record. Defendant owned and operated a successful office equipment business named E-Media Plus. He developed a significant gambling problem and began betting large sums weekly with a bookmaker named Robert D'Alessio, who is referred to as "Elvis." Elvis instituted daily and weekly betting limits for his clients; defendant's limit was $10,000 per day. Defendant told Elvis he knew a number of people who wanted to sign up for new accounts. Some were actual bettors, and some were fictitious. Defendant claims he "opened up a series of accounts" using the names of his employees to circumvent the betting limits imposed by Elvis.

As part of its investigation of Elvis for illegal gambling operations, the Bergen County Prosecutor's Office (BCPO) wiretapped Elvis, who frequently spoke to defendant on the phone. These calls led to the BCPO's interest in defendant and his eventual arrest. Wiretap evidence was gathered from December 10, 2005 to February 9, 2006. On intercepted phone conversations,

defendant was heard complaining to Elvis about difficulties in getting people holding accounts to pay their weekly debts. The BCPO concluded defendant was promoting gambling by acting as an agent of Elvis. Defendant and his wife were arrested on February 9, 2006. Defendant was charged with third-degree promoting gambling, N.J.S.A. 2C:37-2(a), third-degree conspiracy to promote gambling, N.J.S.A. 2C:5-2 and 2C:37-2(a), and second-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25.

After his arrest, defendant's neighbor, who was purportedly friendly with then Bergen County Prosecutor John Molinelli, intervened on defendant's behalf and spoke to Molinelli about defendant's plight. Molinelli allegedly recommended that defendant retain attorney Joseph Rem.[1] Defendant claimed he hired Rem based on that recommendation.

Defendant further claims that Molinelli told defendant's neighbor that Molinelli would be making a global offer and if defendant did not forfeit the $3,000,000 voluntarily, the $4,300,000 seized would be confiscated, his wife

_____

[1] Any such recommendation violates the Code of Ethics governing county prosecutors. Code of Ethics for County Prosecutors, (5)(K) (Apr. 30, 1997) ("No county prosecutor . . . shall recommend, contact or assist in obtaining counsel to represent any person . . . who is accused of a criminal offense."). Defendant acknowledges, however, that investigation "yielded no evidence" that Rem "played any part in the actions taken by Molinelli" regarding "retain[ing] a particular defense counsel." Moreover, defendant does not claim that Rem had a conflict of interest or that Rem's loyalty was to Molinelli, rather than to him.

A-4556-19

would go to jail, and he would go to prison. Defendant contends he waived his right to indictment and trial to avoid that result.

Defendant alleges that he told Rem that he was just gambling, the accounts with Elvis were set up to facilitate larger personal bets, and that he had never collected or laundered money for Elvis. He claims he "paid taxes on every check that was made to a person that [he] double endorsed [to] pay Elvis."

Defendant claims that Rem did not undertake any investigation and did not explain the law of promoting gambling. He alleges Rem told him "the BCPO's case had [him] over a barrel and that [he] was going to go to state prison along [with] his wife if [he] did not fall on [his] sword and plead guilty." He further alleges that Rem told him he "was promoting gambling whether [he] gambled the money on [his] own as a player or whether [he] collected for Elvis. He said it did not matter because gambling at that level alone was sufficient to prove [he] promoted gambling."

Rem and the BCPO began discussions to explore whether an amenable plea agreement could be reached because defendant strongly wished to have the charges against his wife dismissed for the benefit of her and their children. On February 24, 2006, defendant entered into a cooperation agreement with

the BCPO to provide specific information to advance the BCPO's ongoing gambling investigation.

On May 4, 2006, the State of New Jersey, acting through the BCPO, filed a verified complaint for civil forfeiture pursuant to N.J.S.A. 2C:64-1, against funds on deposit in accounts in the name of defendant or E-Media Plus, Inc., American Express gift checks seized from defendant, and ninety-one gift cards. The complaint alleged that defendant engaged in conspiracy; racketeering, possession of gambling records, promotion of gambling; and financial facilitation and charged him with those offenses. It further alleged:

> 4. The investigation revealed that large gambling rings were conducted through various operatives or "agents" that were running illegal gambling "packages."
>
> 5. The agents would collect money (losses from) or pay winnings to actual bettors.
>
> 6. The investigation revealed that code names and passwords were used to place[] wagers on various sporting events each week.
>
> 7. The investigation further revealed that over one million dollars per week in illegal wagers were placed and an average of $500,000[] per week was being paid out and/or collected by the members of this gambling ring.
>
> 8. The investigation also uncovered an extensive money laundering investigation by Robert[] D'Alessio and his co-conspirators in an effort to hide the illicit cash proceeds.

A-4556-19

9. The defendant property, presently in the possession of the [BCPO], was used or intended to be used in the furtherance of criminal activity, or was the proceeds of such criminal activity.

10. . . . Stephen Marolda, individually and as owner[] of E-Media Plus, Inc., along with others identified in this investigation, transported or possessed the defendant currency knowing or which a reasonable person would have believed to be derived from criminal activity.

11. . . . Stephen Marolda and the other claimants engaged in transactions involving property known or which a reasonable person would believe to be derived from criminal activity with the intent to facilitate or promote the criminal activity.

12. The defendant currency . . . seized from . . . Ste[ph]en Marolda and E-Media Plus, Inc. presently in the possession of the [BCPO], was used or intended to be used in the furtherance of illegal activity, or was the proceeds of any such illegal activity.

On August 17, 2006, a plea agreement was reached that resolved the criminal charges and the civil forfeiture action. In exchange for a recommended sentence of a three-year term of probation conditioned upon 180-days in jail, and the dismissal of the charges filed against defendant's wife, defendant: (1) waived his right to indictment and trial by jury; (2) pled guilty to an accusation charging him with third-degree promoting gambling; (3) agreed to a consent order for final judgment in the civil forfeiture action forfeiting $3,000,000 to the BCPO; and (4) agreed to provide truthful

6

testimony at the trial of any co-defendants. The State did not object to the jail term being served by electronically monitored home detention and the early termination of probation after eighteen months if defendant did not violate the terms of probation.

During the plea hearing, defendant testified that his attorney answered all of his questions, that he was satisfied with the services his attorney rendered, and that his answers to the questions on the plea form were truthful and accurate. Defendant acknowledged that by pleading guilty, he was admitting the truth of the charge. Defendant further acknowledged that he was entering the guilty plea freely and voluntarily without anyone forcing or threatening him to do so.

Defendant then provided the following factual basis for his plea. Defendant stated he gambled through Elvis and paid him on a weekly or biweekly basis. He acknowledged he accepted bets for some of his employees, naming two of them. He admitted to participating in "a pay-and-collect situation with both of those individuals and Elvis."

Defendant testified that Elvis set up four betting lines for him that totaled $260,000 per week. If he lost a bet, he would pay Elvis by checks under $10,000 each. Defendant maintained written records of the bets that

indicated the amount he needed to collect from the employees. During the colloquy, defendant made the following additional admissions:

> Q: [D]id you keep or help keep written records regarding [bets on the accounts he managed]? In other words, you would rely on various records that would tell you I need to collect a certain amount of money from - -[?]
>
> Defendant: Yes.
>
> Q: From Mr. Cohen or Mr. Reilly [sic] and pay Elvis?
>
> Defendant: That's correct.

The trial court found defendant provided a factual basis for the plea and entered the plea voluntarily. During the sentencing hearing on November 3, 2006, defense counsel noted there were no additions, changes, or corrections to the presentence investigation report. Counsel further stated that defendant "pled guilty to forwarding to a bookie the bets of his associate when he paid his own gambling debts, so he assisted in gambling in that he acted as a go-between; that people placed bets with him." Counsel described the plea bargain as "fair" and asked the court "to honor its terms." Defendant did not allocute.

The court sentenced defendant to one year of probation conditioned upon 180 days in jail, and afforded defendant an opportunity to apply for electronic

monitoring or work release. Defendant did not appeal his conviction or sentence.

While in court, defendant signed a consent order for final judgment for the forfeiture of $3,000,000 to the BCPO. The consent order also stated that defendant, his wife, and E-Media Plus "waive any claim or cause of action they may have now or in the future against the State of New Jersey, the [BCPO] . . . or any of their agents or employees, relating to the seizure, forfeiture and retention of the defendant['s] property . . . ."

On September 30, 2019, almost thirteen years after he was sentenced, defendant filed a first petition for PCR. Defendant sought an evidentiary hearing, withdrawal of his guilty plea, and the return of the forfeited funds. He argued that the time limitation imposed by Rule 3:22-12(a)(1) should be relaxed. Defendant raised claims of actual innocence, newly discovered evidence, ineffective assistance of counsel, and that the BCPO withheld exculpatory evidence. Defendant recanted his admissions during the plea hearing, contended that he never acted as a bookmaker for Elvis, and claimed his testimony during the plea hearing was fiction.

The petition was supported by several certifications, including the certification of Steven Cohen who "worked for [defendant] and E-Media Plus during the relevant times that are the subject of the criminal investigation from

9

late 2005" until defendant's arrest. In paragraph eighteen of his certification, Cohen stated:

> It did happen that [defendant] called me sometimes after he would bet many of the thousands of dollars on several maxed out accounts he had if I would like a small [percentage] of a bet he had placed in order to root along with him usually for one of our favorite NY teams. It was a symbolic gesture. No money or anything of value ever changed hands [plus or minus] between [defendant] and me ever any time he asked me if I wished to take a small [percentage] of one of his bets.

In another supporting certification, Dianne Coopey, who also worked for defendant at E-Media Plus during the relevant period, stated: "During the entire time period that this investigation took place I often overheard [defendant] talking on the phone or conversing with fellow workers about gambling and gambling related matters, but never once did I ever hear [defendant] acting as an agent or as a collector for bookmakers."

Following briefing and oral argument, the PCR court issued a July 13, 2020 order and accompanying written decision denying PCR without an evidentiary hearing. The court found that trial counsel "was not deficient, and the defendant received the benefit of the plea deal" which "minimize[ed] the exposure the defendant and his wife were facing." Further, there was "no evidence that [trial counsel's] representation was deficient or prejudiced[.]"

10

The court concluded that defendant made a "bare assertion of innocence" which was "insufficient to justify withdrawal of [the] guilty plea." The court found defendant did not present any specific facts that credibly supported his claim and "defendant's attack on the voluntariness of his plea has no merit." The court further determined that defendant failed to submit facts showing he was coerced or pressured to accept the plea agreement by outside influences.

The court rejected defendant's claim of newly discovered evidence. It found his claim of actual innocence was "based on speculation and unsupported claims against former Prosecutor Molinelli."

The court also rejected defendant's claim that the BCPO violated its duty to disclose exculpatory evidence. It found "[t]here is no evidence that the Prosecutor withheld exculpatory evidence." The court characterized defendant's application as "an attempt to reopen a fourteen-year-old case and go on a fishing expedition."

The court considered "the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim." State v. Mitchell, 126 N.J. 565, 580 (1992). The court explained that "[a]bsent compelling, extenuating circumstances, the longer a defendant delays in filing his PCR petition, the heavier the burden becomes in justifying the late filing." The court noted the petition was filed thirteen years after defendant's conviction

despite defendant "admit[ting] that he considered a [PCR] application many years ago but chose not to proceed" due to "what [defendant] believes [was] prosecutorial misconduct and fear of retaliation[.]" The court found:

> There is no evidence of excusable neglect, nor is there any fundamental injustice to warrant relaxation of the rule. The defendant provided no compelling or exceptional circumstances to warrant relaxation of the rule. Furthermore, the prejudice to the State would be substantial. Over the ensuing years, witnesses' memories would certainly have faded, others' convictions have been expunged and it is highly likely that witnesses would not be available for trial.

As to the request for an evidentiary hearing, the court determined that viewing the facts most favorably to defendant, he did not demonstrate that an evidentiary hearing was necessary. The court reiterated that "defendant's assertions are without any basis in fact" and were "merely speculation."

Regarding the return of the forfeited funds, the court employed the test adopted in State v. Amboy Nat. Bank, 447 N.J. Super. 142, 157 (App. Div. 2016), and found the State "met its burden that there was a causal connection between the $3,000,000.00 and the illicit funds attributed to promotion of gambling."

This appeal followed. Defendant raises the following points:

POINT I

THE LOWER COURT ERRED IN NOT ORDERING AN EVIDENTIARY HEARING WHEN THE PCR

12

MATTER INVOLVED FACTS AND TESTIMONY WHICH ARE OUTSIDE THE RECORD OF ANY LOWER COURT PROCEEDING.

POINT II

THE INADEQUATE INVESTIGATION, PREPARATION, AND PERFORMANCE OF DEFENSE COUNSEL VIOLATED DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

POINT III

THE FIVE-YEAR RULE ON PCR IS RELAXED AND IS NOT APPLICABLE.

POINT IV

APPELLANT'S CONFISCATED FUNDS MUST BE RETURNED AS A MATTER OF LAW.

POINT V

THE LOWER COURT ERRED IN MARSHALING THE FACTS AND LAW REGARDING APPELLANT'S [RULE] 3:21 MOTION TO WITHDRAW HIS GUILTY PLEA BASED ON A COLORABLE CLAIM OF INNOCENCE.

POINT VI

THE LOWER COURT IGNORED NEWLY-DISCOVERED EVIDENCE.

POINT VII

THE PROSECUTOR'S FAILURE TO CORRECT FALSE AND MISLEADING EVIDENCE

13                                          A-4556-19

AMOUNTED TO PROSECUTORIAL MISCONDUCT.

POINT VIII

APPELLANT ASSERTS A FREE-STANDING ACTUAL INNOCENCE CLAIM WHICH THE LOWER COURT IGNORED.

II.

Defendant pled guilty to violating N.J.S.A. 2C:37-2(a)(2), which provides that "[a] person is guilty of promoting gambling when he knowingly":

Engages in conduct, which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

Defendant contends he was actually innocent of promoting gambling because he was a mere player. N.J.S.A. 2C:37-2(c) provides: "It is a defense to a prosecution under subsection a. that the person participated only as a player. It shall be the burden of the defendant to prove by clear and convincing evidence his status as such player."

Defendant was prosecuted for conduct that occurred in 2005 to 2006. He pled guilty to promoting gambling on August 17, 2006. He was sentenced on November 3, 2006. His one-year probation term ended in 2007. Defendant did not appeal his conviction or sentence. Despite having personal knowledge of the nature and extent of the actions he undertook as part of his rampant gambling, as well as the acts he did not commit, defendant waited until September 30, 2019 to file his petition.

Subject to certain exceptions that do not apply to this case, a first petition for PCR must be filed within five years after the date of entry of the judgment of conviction being challenged. R. 3:22-12(a)(1). Except as provided in the rule, this time limitation "shall not be relaxed." R. 3:22-12(b). Moreover, the time bar may "be relaxed only under truly exceptional circumstances." State v. Cummings, 321 N.J. Super. 154, 168 (App. Div. 1999) (citing Mitchell, 126 N.J. at 580).

"[A] PCR judge has an independent, non-delegable duty to question the timeliness of the petition, and to require the rule's time restrictions pursuant to Rule 3:22-12. Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim." State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018).

Here, the delay in filing the petition was not "due to defendant's excusable neglect." R. 3:22-12(a)(1)(A). Defendant was not incarcerated, had the financial means to hire legal counsel, and was aware of the underlying facts and circumstances supporting his claim for PCR based on actual innocence well before the five-year period expired. He considered filing the petition years earlier but chose to wait until after Prosecutor Molinelli resigned. Even then, defendant did not file his petition within one year of Molinelli's resignation in January 2016. See R. 3:22-12(a)(1)(B). His petition was filed thirty-two months later.

Moreover, "enforcement of the time bar [did not] result in a fundamental injustice." R. 3:22-12(a)(1)(A). The mere player defense is an affirmative defense that places the burden on "the defendant to prove by clear and convincing evidence his status as [a mere] player." N.J.S.A. 2C:37-2(c); see State v. Federico, 103 N.J. 169, 174 (1986) ("participation as only a player, if established by clear and convincing evidence, is a defense to a gambling prosecution").

Defendant has not met that evidential burden. As we have noted, his testimony during the plea hearing refutes his claim that he was a mere player. Defendant acknowledged he accepted bets for some of his employees, naming two of them. He admitted to participating in "a pay-and-collect situation with

16

both of those individuals and Elvis." Defendant acknowledged he maintained written records of the bets that indicated the amount he needed to collect from his employees to pay to Elvis. His testimony at the plea hearing provided a more than sufficient factual basis for his plea and demonstrated that his participation in the gambling scheme was not limited to the actions of a mere player.

Unlike the recantation of an eyewitness who identifies a defendant or scientific evidence that disproves defendant was the perpetrator, the facts on which defendant relies to show he was a mere player, were not newly discovered. The factual predicate for the relief sought was known far longer than one year before the petition was filed. See R. 3:22-12(a)(2)(B).

Nor does this case involve a newly recognized constitutional right or defense. See R. 3:22-12(a)(2)(A). N.J.S.A. 2C:37-2(c) was enacted by the Legislature long before defendant's conduct in 2005 and 2006.

We further note that the plea agreement resolved the investigation of defendant and his wife. The charges against his wife were dismissed. Defendant pled guilty to a single offense and was sentenced within the parameters of the plea agreement. There is no evidence in the record that the BCPO was still prosecuting defendant and would continue that investigation if defendant filed his PCR petition within five years of his sentencing date.

17

Defendant's speculative fears that Prosecutor Molinelli might retaliate against him if he sought relief from his conviction or the forfeiture of his assets were unsubstantiated. Defendant's reference to Molinelli's alleged involvement in the sale of forged sports memorabilia has no known connection to defendant.

Defendant filed his petition more than seven years after that five-year period expired. The delay did not fall within any of the exceptions to the time limitation imposed by Rule 3:22-12. Accordingly, his claims were clearly time-barred and were properly denied without an evidentiary hearing.

III.

Defendant asserts that the five-year time limit for filing his petition should be relaxed due to his claim of actual innocence. We are unpersuaded.

Under United States Supreme Court doctrine, a federal habeas corpus petitioner is allowed, upon "a convincing showing of actual innocence . . . to overcome a procedural bar to consideration of the merits of their constitutional claims." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (applying the doctrine to the one-year statute of limitations governing first habeas petitions). In order to proceed on a claim of actual innocence, a defendant must first present (1) new, reliable evidence and (2) show by a preponderance of the evidence that, given this new evidence, "it is more likely than not that no

18

reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995); accord McQuiggin, 569 U.S. at 399.

However, the doctrine is not constitutionally required; it "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." McQuiggin, 569 U.S. at 392 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). It permits a federal court to consider claims even though a state court has procedurally barred them. Id. at 394. We are aware of no authority – and defendant cites none – for us to apply this federal equitable doctrine to override the clear mandate of Rule 3:22-12. Moreover, Rule 1:3-4(c) prohibits a trial court from enlarging the time limits specified in Rule 3:22-12.

We reject defendant's claim that the time-bar imposed by the Rule can be circumvented by a claim of actual innocence under the facts and inordinate delays in this matter. Defendant has not demonstrated "excusable neglect" or that "enforcement of the time bar would result in a fundamental injustice." R. 3:22-12(a)(1)(A). Accordingly, his claims were time-barred. Brown, 455 N.J. Super. at 470. "[L]ifting the five-year bar . . . under the present circumstances would render the Rule largely meaningless." Mitchell, 126 N.J. at 576; see also State v. Ellison, 448 N.J. Super. 113, 125, 127 (Law Div. 2016), aff'd o.b., 455 N.J. Super. 280 (App. Div. 2018) (finding no excusable neglect or

19

fundamental injustice where PCR petition was filed fourteen years after sentencing, initially due to lack of knowledge of potential for civil commitment but four years after the State initiated civil commitment proceedings).

IV.

Relying on <u>Timbs v. Indiana</u>, 586 U.S. ___, 139 S. Ct. 682 (2019), defendant argues that the forfeited funds must be returned as a matter of law. We are unpersuaded.

Civil forfeiture actions are expedited. The State must file the forfeiture action within ninety days of the seizure. N.J.S.A. 2C:64-3(a). On May 4, 2006, the BCPO filed a timely verified complaint for civil forfeiture of the seized funds and assets pursuant to N.J.S.A. 2C:64-3(a), (b). The owners of seized assets may contest the civil forfeiture action by filing an answer to the complaint "in accordance with the Rules of Court." N.J.S.A. 2C:64-3(d). "If no answer is filed and served within the applicable time, the property seized shall be disposed of pursuant to N.J.S.A. 2C:64-6." N.J.S.A. 2C:64-3(e).

Neither defendant nor the other owners of the property contested the forfeiture action. Instead, on November 3, 2006, defendant and the other owners consented to the entry of an order for judgment in the civil forfeiture action and forfeited three million dollars to the BCPO. The consent order

20

stated that defendant, his wife, and E-Media Plus "forfeit[ed] all their right, title and interest in $3,000,000[] of the captioned defendant property to the . . . [BCPO]" and "waive[d] any claim or cause of action they may have now or in the future against the State of New Jersey [and] the [BCPO] . . . relating to the seizure, forfeiture and retention of the defendant['s] property . . . ."  That waiver is enforceable.  In turn, the judgment of conviction entered that same day stated: "Defendant forfeited three million dollars."

In addition, claims by innocent owners for the return of seized property are subject to the three-year statute of limitations imposed by N.J.S.A. 2C:64-8, which provides:

> Any person who could not with due diligence have discovered that property which he owns was seized as contraband may file a claim for its return or the value thereof at the time of seizure within [three] years of the seizure if he can demonstrate that he did not consent to, and had no knowledge of its unlawful use.  If the property has been sold, the claimant receives a claim against proceeds.

For example, a replevin action brought by an innocent owner to recover a handgun seized by police and subsequently turned over to the county prosecutor is subject the three-year statute of limitations imposed by N.J.S.A. 2C:64-8.  Johnson v. Schneider, 212 N.J. Super. 442, 446-47 (Law Div. 1986).

Defendant knew of the seizure of the funds from his and his company's bank accounts, and the seizure of the gift cards and gift checks, when the

21

seizures occurred in 2006. Aside from any preclusive effect of the consent order for final judgment of forfeiture, which has not been vacated, defendant's claim for the return of the sized funds is clearly time-barred.

Moreover, the forfeiture proceeding was a separate in rem civil action filed in the Civil Part. See State v. Seven Thousand Dollars, 136 N.J. 223, 233 (1994) ("to enforce forfeiture of derivative contraband the State must bring a civil action . . . against the property sought to be forfeited"); Amboy Nat. Bank, 447 N.J. Super. at 156 (stating that "a civil forfeiture action is brought as an in rem proceeding against the property rather than as an action against the owner of the property"); State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird, 371 N.J. Super. 228, 237 (App. Div. 2004) (noting that "a forfeiture proceeding is typically commenced in the form of a civil action complaint"). Indeed, the forfeiture action is not controlled by the outcome of the related criminal prosecution. See N.J.S.A. 2C:64-4(b) ("the fact that a prosecution involving seized property . . . terminates with no culpability shall not preclude forfeiture proceedings against the property"); see also Amboy Nat. Bank, 447 N.J. Super. at 157 (explaining that "the [forfeiture] statute does not require that someone be convicted or even charged with an indictable offense as a prerequisite to forfeiture") (citing Seven Thousand Dollars, 136 N.J. at 233-34). "In that action the State must prove by a preponderance of the

evidence that the seized property was connected to unlawful activity." Seven Thousand Dollars, 136 N.J. at 233.

Defendant and the other owners of the seized property had notice of the forfeiture action, waived their right to contest it, and consented to the forfeiture of $3,000,000. They are bound by the forfeiture. See Seneca v. Bissell, 274 N.J. Super. 613, 618-19 (App. Div. 1994) (explaining that the plaintiff could not properly bring a replevin action to recover seized funds after signing an assignment of interest in the property).

More fundamentally, the forfeiture action is a separate civil proceeding. Any application for relief from the judgment entered in the forfeiture action must be filed under Rule 4:50-1 in the Civil Part. See State v. 1979 Pontiac Trans Am, 98 N.J. 474, 480 (1985) (stating "forfeiture actions . . . are conducted as in rem civil proceedings"). Defendant has not done so. A motion for relief from a judgment or order based on excusable neglect or newly discovered evidence must be filed within one year after the date the judgment or order was entered. R. 4:50-2. A Rule 4:50-1 motion based on the other grounds raised by defendant must be filed "within a reasonable time." Ibid. Under either standard, the time to file a motion for relief from the judgment has long since expired.

A-4556-19

To the extent we have not specifically addressed any of defendant's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4556-19